**MCSC** INC.
MOTOR CARRIER SAFETY CONSULTING
INDUSTRY ANSWERS

P.O. Box 531195/Birmingham, Alabama 35253-1195
2229 First Avenue North/Birmingham, Alabama 35203
Ph. (205) 871-4455/Fax: (205)871-9070

October 1, 2019

Laurence Stinson, Esq.
Stinson Law Group, P.C.
1421 Rumsey Avenue
Cody, WY 82414

**Re:**   *Miears v. Sysco Montana, Inc.*

Dear Mr. Stinson:

The following is a list of the case materials which I have received and reviewed in the above styled matter:

1.   Accident Report (07/06/19) - 11 pages
2.   Complaint and Jury Demand (07/06/19) - 6 pages
3.   Recorded Interview of Rodney Miears (07/06/19) - 1 audio file
4.   Driver Qualification File of James Friede (07/06/19) - 27 pages
5.   James Friede's CDL and MVR, 01/26/15 (07/06/19) - 5 pages
6.   James Friede's MVR, 08/31/15  (07/06/19) - 2 pages
7.   James Friede's Personnel File (07/06/19) - 101 pages
8.   Sysco Montana, Inc. Safety Training Materials (07/06/19) - 260 pages
9.   Montana CDL Manual, 2012-2014 (07/06/19) - 91 pages
10.   Photos of Training Materials Provided to James Friede With Signed Receipt (07/06/19) - 4 pages
11.   Motor Carrier Identification Reports for Sysco Montana, Inc. (07/06/19) - 2 pages
12.   Sysco Redacted Dispatch Reports (07/06/19) - 41 pages
13.   ECM Data for Tractor (07/06/19) - 26 pages
14.   Sysco Internal Emails Regarding Accident (07/06/19) - 12 pages
15.   Sysco Accident Register (07/06/19) - 6 pages
16.   Plaintiff's Workers' Compensation Documents (07/06/19) - 614 pages
17.   Plaintiff's Employment Documents (07/06/19) - 302 pages
18.   Defendant's Privilege Log (07/06/19) - 3 pages
19.   Defendant's Responses to Plaintiffs' First Requests for Production of Documents (07/06/19) - 18 pages
20.   Defendant's Responses to Plaintiffs' First Interrogatories to Defendant (07/06/19) - 7 pages
21.   Defendant's First Supplemental Responses to Plaintiffs' First Requests for Production of Documents (07/06/19) - 3 pages
22.   Sysco Montana, Inc. Preferred Work Methods Safety Checklist (07/06/19) - 2 pages

**Exhibit 2**





List of case material continued:

23.     Defendant's Responses to Plaintiffs' First Requests for Admissions to Defendant (07/06/19) - 4 pages
24.     Defendant's First Supplemental Rule 26 Disclosures (07/06/19) - 2 pages
25.     Plaintiff's Medical Documents (07/06/19) - 457 pages
26.     Accident Scene Photos (07/06/19) - 13 pages
27.     WYDOT Safety Bulletin Regarding Accident (07/06/19) - 4 pages
28.     Plaintiff's Tax Documents 2010-2018 (07/06/19) - 66 pages
29.     Plaintiff's Rule 26 Initial Disclosures (07/06/19) - 6 pages
30.     Plaintiff Marian Miears' Answers to Defendant Sysco Montana, Inc.'s First Interrogatories (07/06/19) - 6 pages
31.     Plaintiff Marian Miears' Response to Defendant Sysco Montana, Inc.'s First Requests for Production of Documents (07/06/19) - 4 pages
32.     Plaintiff Rodney Miears's Answers to Defendant Sysco Montana, Inc.'s First Interrogatories (07/06/19) - 17 pages
33.     Plaintiff Rodney Miears' Response to Defendant Sysco Montana, Inc.'s First Request for Production of Documents (07/06/19) - 6 pages
34.     Plaintiffs' Supplemental Rule 26 Disclosures (07/06/19) - 4 pages
35.     Answer, Affirmative Defenses, and Jury Demand of Defendant Sysco Montana, Inc. (07/06/19) - 5 pages
36.     Tractor Driver Camera and Dash Camera Footage of Accident (07/06/19) - 3 video files
37.     Defendant's Second Supplemental Responses to Plaintiffs' First Requests for Production of Documents (09/05/19) - 4 pages
38.     Smith System DriverStudy Guide and Quiz (09/05/19) - 24 pages
39.     Screenshot of Sysco Transportation Incident List for 2012 and 2013 (09/05/19) - 2 pages
40.     Defendant's Fourth Supplemental Rule 26 Disclosures (09/05/19) - 3 pages
41.     Photocopy of Articles 8 & 9 of the Employee Handbook for Sysco (09/05/19) - 1 page
42.     Sysco Transportation Safety Audit by Bill Wiley (09/05/19) - 5 pages
43.     Medical Records for Mr. Miears (09/05/19) - 29 pages
44.     Deposition of James Kelly (09/12/19) - 81 pages
45.     Exhibits to the Deposition of James Kelly (09/12/19) - 77 pages
46.     Deposition of James Friede (09/12/19) - 134 pages
47.     Exhibits to the Deposition of Bradley Frank (09/12/19) - 63 pages
48.     Deposition of Bradley Frank (09/16/19) - 130 pages

    The following is a report of my opinions to date in this matter and is based upon my review of the above listed documents, as well as my education, experience and training. I reserve the right to add to, change and/or modify my report should additional information become available that may require me to do so.




I am a 1975 graduate of the University of Tennessee (Knoxville) with a Bachelor of Science degree in Business Administration and a major in Transportation.  From 1975 to 1982, I was employed as a Special Agent (Highway Safety Management Specialist) for the U.S. Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier Safety in the Birmingham, Alabama field office.

During that time, I worked with and was trained by a former Interstate Commerce Commission (ICC) Safety Investigator who had also been employed as a director of safety in the trucking industry.  The ICC had the responsibility for truck safety regulation and enforcement from 1935 (Motor Carrier Act, Interstate Commerce Act) until 1966 when the U.S. Department of Transportation (DOT) was formed and the safety regulations were transferred.

I received several hundred hours of training at the U.S. Department of Transportation, Transportation Safety Institute in Oklahoma City, including fundamentals and advanced accident investigation/reconstruction training, fundamentals and advanced hazardous materials compliance training, safety enforcement training, and safety program standardization training.

My experience and training includes, but is not limited to, commercial motor vehicle safety, motor carrier safety, motor carrier/vehicle regulatory enforcement, accident investigation and reconstruction, commercial motor vehicle operations, inspection & maintenance, cargo loading & securement, and hazardous materials shipping/transportation just to name some of the areas of my qualifications.

I have personally performed hundreds of audits of commercial motor carriers/shippers, performed thousands of inspections of commercial motor vehicles and drivers, made more than one hundred enforcement cases, and investigated/reconstructed more than fifty commercial motor vehicle accidents and hazardous materials incidents.  I also performed several joint accident investigations and/or reconstructions working with the National Transportation Safety Board (NTSB) to make determinations related to accident causation.

Since 1983, I have been employed full time as President of Motor Carrier Safety Consulting, Inc. (MCSC) in Birmingham, Alabama. MCSC provides a wide variety of safety consulting services to the commercial motor carrier industry, as well as in litigation matters.  I was personally hired by the State of Alabama to train the DPS State Troopers in accident investigation, regulatory interpretation, compliance enforcement, and roadside inspection, after Alabama adopted the safety and hazardous materials regulations.  You may refer to my professional resume for a more detailed explanation of my qualifications.




**Accident Description:**

The following is a brief description of the accident as taken from the Wyoming Investigator's Traffic Crash Report: On June 15, 2015 at approximately 2:10 PM, Vehicle 1 (2013 Dodge Charger - Rodney Miears) was heading east on US 14, 16, 20 at 65 MPH.  Vehicle 2 (2003 International tractor-trailer - James Friede - Sysco Montana, Inc.) was heading west on US 14, 16, 30.  At mile post 33 is Yellowstone Valley Inn and Vehicle 2 was going there to make a delivery.  At the eastern entrance Vehicle 2 slowed and stopped before making a left turn.  Driver 2 stated he saw Vehicle 1 and thought the vehicle was far enough away and not traveling that fast.  Driver 2 figured he had plenty of time.  Driver 2 stated he looked over at Yellowstone Valley Inn to see where he could go and then started to make his left turn.  Driver 1 noticed Vehicle 2 start the left turn and decided to brake and steer to his right.  Vehicle 1 struck the right front of Vehicle 2 with the left front.  Vehicle 1 continued off the roadway and came to rest in a ditch on its' wheels facing a westerly direction.  Vehicle 2 during the collision was pushed back a short distance and came to rest on the roadway facing a southern direction.  Vehicle 2 (James Friede) was issued a citation for 'failed to grant right-of-way to motor vehicle.'  *Note: The writer of this report does not necessarily adopt the police officers narrative of the accident and is using it for descriptive purposes only.*

**Discussion/Opinions:**

Sysco Montana, Inc. (hereafter Sysco) is located in Billings, MT and is USDOT registered (USDOT #53565), authorized for hire (MC-197768), private (property), interstate motor carrier of fresh produce, meat, chemicals, refrigerated food, beverages and paper products.  According to information obtained from the Federal Motor Carrier Safety Administration (FMCSA) management information system database, Sysco filed an MCS-150 report form with the FMCSA dated February 20, 2019, which showed that they employed 121 drivers, operated 100 power units, and traveled 5,750,000 miles in 2018.  Currently, Sysco has a Satisfactory safety rating from the FMCSA dated April 23, 2007, as a result of a compliance review dated April 19, 2007.  As a USDOT registered motor carrier, Sysco is subject to compliance with the Federal Motor Carrier Safety Regulations (FMCSRs).

The information above, pertaining to Sysco, was found on the FMCSA SAFER Website which contains electronic records of each USDOT registered motor carrier, including, but not limited to, the company's identification, size, commodity information, and information for a 24 month period.

When Sysco applied for, and subsequently received, their USDOT number (USDOT #53565), they had to make Safety Certifications on the MCS-150 application (18A through 18C), as follows:





**A.** Applicant maintains current copies of all U.S. DOT Federal Motor Carrier Safety Regulations, Federal Motor Vehicle Safety Standards, and the Hazardous Materials Regulations (if a property carrier transporting hazardous materials), understands and will comply with such regulations, and has ensured that all company personnel are aware of the current requirements. **B.** Applicant certifies that the following tasks and measures will be fully accomplished and procedures fully implemented before it commences operations in the United States. **1. Driver qualifications:** a) The carrier has in place a system and procedures for ensuring the continued qualification of drivers to operate safely, including a safety record for each driver, procedures for verification of proper licensing of each driver and procedures for identifying drivers who are not complying with the safety regulations. b) The carrier has procedures in place to review drivers' employment and driving histories for at least the last 3 years to determine whether or not the individual is qualified and competent to drive safely. c) The carrier has established a program to review the records of each driver at least once every 12 months and will maintain a record of the review. d) The carrier will ensure that all of its drivers are at least 21 years of age and if applicable possess a valid Commercial Drivers License (CDL). **2. Hours of Service:** a) The carrier has in place a recordkeeping system and procedures to monitor the hours-of-service performed by drivers, including procedures for continuing review of drivers' log books, and for ensuring compliance with all operations requirements. b) The carrier has ensured that all drivers are knowledgeable of the hours-of-service requirements, and has clearly and specifically instructed the drivers concerning their responsibility to comply with applicable 10/11, 14/15, and 60/70-hour rules as well as the requirement for preparing daily log entries in their own handwriting for each 24-hour period. **3. Drug and alcohol testing:** a) The carrier is familiar with the alcohol and controlled substance testing requirements of 49 CFR part 382 and 49 CFR part 40 and has in place a program for systematic testing of drivers. **4. Vehicle condition:** a) The carrier has established a system and procedures for inspection, repair and maintenance of its vehicles in a safe condition, and for preparation and maintenance of records of inspection, repair and maintenance in accordance with the Federal Motor Carrier Safety Regulations and the Hazardous Materials Regulations. b) The carrier will ensure that all violations and defects noted on inspection reports are corrected before vehicles and drivers are permitted to continue operation. **5. Accident monitoring program:** a) The carrier has in place a program for monitoring vehicle accidents and maintains an accident register in accordance with 49 CFR 390.15. b) The carrier has established an accident countermeasures program and driver training program to reduce accidents. **6. Production of records:** a) The carrier can and will produce records demonstrating compliance with the safety requirements within 48 hours of receipt of a request from a representative of the USDOT/FMCSA or other authorized Federal or State official.

Additionally, when Sysco applied for and received their Operating Authority (MC-197768), they had to make a Safety Certification on the OP-1 application (Section IV), as follows:





Applicants Subject to Federal Motor Carrier Safety Regulations. *If you will operate vehicles of more than 10,000 pounds GVWR and are, thus, subject to pertinent portions of the USDOT's Federal Motor Carrier Safety Regulations (FMCSRs) at 49 CFR, Chapter 3, Subchapter B (Parts 350-399), you must certify as follows:* Applicant has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial vehicles and the safe transportation of hazardous materials, and will comply with these regulations.  In so certifying, applicant is verifying that, at a minimum, it: **1.** Has in place a system and an individual responsible for ensuring overall compliance with FMCSRs. **2.** Can produce a copy of the Federal Motor Carrier Safety Regulations and the Hazardous Materials Transportation Regulations. **3.** Has in place a driver safety training/orientation program. **4.** Has prepared and maintains an accident register (49 CFR 390.15). **5.** Is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR 391). **6.** Has in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance (49 CFR 392, 395, and 396). **7.** Is familiar with, and will have in place on the appropriate effective date, a system for complying with USDOT regulations governing alcohol and controlled substances testing requirements (49 CFR 382 and 40).

FMCSRs Part 390 establishes the general applicability, definitions, general requirements and information pertaining to persons subject to the FMCSRs.  Amongst those general requirements is §390.3(e) entitled "Knowledge of and compliance with the regulations."  This regulation requires that, "every employer shall be knowledgeable of and comply with all regulations which are applicable to that motor carrier's operations, and that every driver and employee be instructed regarding, and comply with all applicable regulations (FMCSRs), and all motor vehicle equipment and accessories required by this subchapter shall be maintained in compliance with all applicable performance and design criteria set forth in this subchapter." FMCSRs §390.11 entitled "Motor carrier to require observance of driver regulations" requires that, "whenever a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition."

Mr. James Kelly, Sysco's Director of Safety, testified, 'Yes, Sysco Montana takes the position that it is responsible for its employee's conduct while that employee is doing the job he was hired to do.'  Mr. James Friede, the Sysco commercial motor vehicle (CMV) driver, testified, 'Yes, the day of that crash I was employed by Sysco Montana, I was driving for Sysco Montana and I was making a delivery to the Yellowstone Valley Inn as part of the route Sysco Montana assigned me.'  Sysco was responsible for Mr. Friede's instruction in, knowledge of, and in compliance with, the FMCSRs, as well as for ensuring the safe operation of the CMV he was operating on their behalf.





As noted above, the driver of the Sysco CMV, Mr. Friede, was in possession of a Montana Class A commercial driver license (CDL), and was 27 years old at the time of the accident.  According to Mr. Friede's driver file, he filled out an Application for Employment with Sysco on December 31, 2014, was hired on January 26, 2015, and was terminated on August 20, 2015.  Mr. Friede testified, 'No, when I applied to Sysco on December 31, 2014 I had not already applied in a CDL school.  No, before Sysco I had never driven a commercial motor vehicle on the road.  Yes, I was terminated from Sysco approximately in August.'  Mr. Friede was an entry-level driver for Sysco, with no over-the-road driving experience, at the time of hire.

FMCSRs §382.301 entitled "Pre-employment testing" requires that, "(a) prior to the first time a driver performs safety-sensitive functions for an employer, the driver shall undergo testing for controlled substances as a condition prior to being used, unless the employer uses the exception in paragraph (b) of this section.  No employer shall allow a driver, who the employer intends to hire or use, to perform safety-sensitive functions unless the employer has received a controlled substances test result from the Medical Review Officer (MRO) or Consortium/Third-Party Administrator (C/TPA) indicating a verified negative test result for that driver. (b) An employer is not required to administer a controlled substances test required by paragraph (a) of this section if: (1) The driver has participated in a controlled substances testing program that meets the requirements of this part within the previous 30 days; and (2) while participating in that program, either: (i) Was tested for controlled substances within the past 6 months (from the date of application with the employer), or (ii) participated in the random controlled substances testing program for the previous 12 months (from the date of application with the employer); and (3) the employer ensures that no prior employer of the driver of whom the employer has knowledge has records of a violation of this part or the controlled substances use rule of another DOT agency with the previous six months."  Sysco failed to require/produce a pre-employment controlled substance test for Mr. Friede, which if not done prior to him driving a CMV on their behalf, would be a violation of FMCSRs §382.301, which is a critical regulation violation. Serious violations of the FMCSRs are identified by "acute" or "critical" regulations.  An acute regulation is one where non-compliance is so severe as to require immediate corrective actions by the motor carrier, and a critical regulation is one where non-compliance relates to breakdowns in management and/or operational controls of the motor carrier.  This demonstrates Sysco's lack of knowledge and safety management controls to ensure compliance with the FMCSRs, as well as their failure to meet the MCS-150 and OP-1 safety certification requirements.

FMCSRs §382.303 entitled "Post-accident testing" requires that, "(a) as soon as practicable following an occurrence involving a commercial motor vehicle operating on a public road in commerce, each employer shall test for alcohol for each of its surviving drivers: (1) Who was performing safety-sensitive functions with respect to the vehicle, if the accident involved the loss of human life;





(2) Who receives a citation within 8 hours of the occurrence under State or local law for a moving traffic violation arising from the accident, if the accident involved: (i) Bodily injury to any person who, as a result of the injury, immediately receives medical treatment away from the scene of the accident; Or (ii) One or more motor vehicles incurring disabling damage as a result of the accident, requiring the motor vehicle to be transported away from the scene by a tow truck or other motor vehicle. (b) As soon as practicable following an occurrence involving a commercial motor vehicle operating on a public road in commerce, each employer shall test for controlled substances for each of its surviving drivers: (1) Who was performing safety-sensitive functions with respect to the vehicle, if the accident involved the loss of human life; or (2) Who receives a citation within thirty-two hours of the occurrence under State or local law for a moving traffic violation arising from the accident, if the accident involved: (i) Bodily injury to any person who, as a result of the injury, immediately receives medical treatment away from the scene of the accident; or (ii) One or more motor vehicles incurring disabling damage as a result of the accident, requiring the motor vehicle to be transported away from the scene by a tow truck or other motor vehicle." Mr. Friede was issued a citation for 'failed to grant right-of-way to motor vehicle' after the accident, therefore Sysco would have been required to have a post-accident controlled substance and alcohol test of Mr. Friede, as required by FMCSRs §382.303. If Sysco failed to obtain both, a post-accident controlled substance and alcohol test, of Mr. Friede, as required, it would be a violation of FMCSRs §382.303, which is a critical regulation violation, indicating a breakdown in management and/or operational controls of the motor carrier. This demonstrates Sysco's lack of knowledge and safety management controls to ensure compliance with the FMCSRs, as well as their failure to meet the MCS-150 and OP-1 safety certification requirements.

FMCSRs §380.503 entitled "Entry-level driver training requirements" requires that, "Entry-level driver training must include instruction addressing the following four areas: (a) Driver qualification requirements. The Federal rules on medical certification, medical examination procedures, general qualifications, responsibilities, and disqualifications based on various offenses, orders, and loss of driving privileges (part 391, subparts B and E of this subchapter). (b) Hours of service of drivers. The limitations on driving hours, the requirement to be off-duty for certain periods of time, record of duty status preparation, and exceptions (part 395 of this subchapter). Fatigue countermeasures as a means to avoid crashes. (c) Driver wellness. Basic health maintenance including diet and exercise. The importance of avoiding excessive use of alcohol. (d) Whistleblower protection. The right of an employee to question the safety practices of an employer without the employee's risk of losing a job or being subject to reprisals simply for stating a safety concern." According to the file material produced, Sysco's experience requirement for a "Deliver Driver" was "at least 2 years previous delivery and/or 100,000 verifiable miles." Mr. Bradley Frank, Sysco's Director of Transportation, testified, 'Yes, I had something to do with the hiring of Mr. Friede. I would have been the person who made the call as to hiring Mr. Friede.'




'Yes, I understood that Mr. Friede had not previously driven a truck that was subject to the Federal Motor Carrier Safety Regulations. Yes, I understood that if I did hire him he would be a new truck driver. **Yes, the job description says that one of the things it requires, "At least 2 years previous delivery and/or 100,000 verifiable miles."** Regarding why the deviation from the job description in hiring Mr. Friede, you know, we would have to look at, like I said before, okay? We cannot go forward without the blessing of our corporate office. So there probably is something that they would have that would tell us we can bring him on as a trainee. Regarding the requirements of the delivery driver description, he would not have met it of a delivery driver but a trainee. I believe there is now a different description for the delivery driver trainee. Yes, the driver description that we are looking at in Exhibit 6 was also in place in 2015. **Under this job description, yes, he would not have met the qualifications for a delivery driver, because he would not have had 2 years' previous delivery and/or 100,000 verifiable miles even when he completed being a trainee.** Regarding what was the grounds for deviating from the approved job description in the hiring of Mr. Friede, he went on the Sysco corporate training plan. **Yes, because Mr. Friede didn't meet the requirements of the job description, I had to approve his hire.** Regarding why I approved him, I couldn't hire him unless it was okayed by our corporate office that he was going to go through the certified truck driving school as well as our program. I can't hire anybody unless they have qualifications or classifications that we can prove that they're going to do or how they're going to do it. We cannot just go on the road down the street and grab this gentleman and say, "You're going to be a truck driver for me." Yes, the program may be approved by corporate, but the training is delivered by Sysco Montana. **Yes, Sysco Montana is aware of the job description. Yes, I knew when I hired Mr. Friede that he did not meet the requirements of the job description.**' Mr. Friede testified, 'No, before Sysco, I had never driven a commercial motor vehicle on the road. Sysco set me up with Sage Driving School, a CDL school. Right, when I first got hired by Sysco at the end of January, I didn't have a CDL and I had not yet been to the Sage trucking school. I'd say, obviously, being somebody that's been in the position of being new with a commercial driver's license, I think just being new with a commercial driver's license is a big deal, and the fact that, you know, there's a lot of stuff that, there's a lot of moving parts with a CMV that they're like not like a normal car. Regarding being handed a delivery driver job description for Sysco, and it saying "at least two years previous delivery and/or 100,000 verifiable miles," yes, I see that. **No, at the time I was hired, I did not have 2 years experience nor did I have 100,000 verifiable miles. No, no one at Sysco came to me and said that was their requirement and they were going to deviate from it.**'

According to Mr. Friede's driver file, the "Coaching for Personal Development Transportation" form indicates his 30-day evaluation was completed on April 3, 2015, however, Sysco failed to complete the 60 and 90 day evaluation. As noted above, Mr. Friede was an entry-level driver for Sysco, with no over-the-road driving experience, at the time of hire.





Furthermore, Sysco violated their own company policy by hiring Mr. Friede in January of 2015, since he did not have the previous two (2) years of delivery experience and/or 100,000 verifiable miles.

An analysis of the file materials for Mr. Friede in the context of FMCSRs §391.11, which sets forth the criteria for the general qualifications of drivers, reveals the following:

- Is at least 21 years old. **(Yes, DOB 03/07/1988)**
- Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records. **(Yes)**
- Can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives. **(No, MT Class A CDL, no experience, entry-level driver)**
- Is physically qualified to drive a commercial motor vehicle in accordance with Subpart E Physical Qualifications and Examinations of this part. **(Yes, medical certificate issued 01/02/2015, exp. 01/02/2017)**
- Has a currently valid commercial motor vehicle operator's license issued only by one State or jurisdiction. **(Yes, MT Class A CDL)**
- Has prepared and furnished the motor carrier that employs him/her with the list of violations or the certificate as required. **(Yes)**
- Is not disqualified to drive a commercial motor vehicle under the rules. **(Yes)**
- Has successfully completed a driver's road test and has been issued a certificate of driver's road test, or has presented an operator's license or a certificate of road test which the motor carrier that employs him/her has accepted as equivalent to a road test. **(Yes, 01/27/2015)**

On June 16, 2015, Mr. Friede wrote the following in his written statement: "While slowing down to make a left hand turn off of highway into Yellowstone Valley Inn, I turned on my turn signal and waited for the traffic in front of me to make their turns. From my perspective, it appeared that I would have had time to turn into my stop off of the highway before on-coming traffic would be approaching to close. I then started to take the left hand turn off of the highway into Yellow Stone Valley. My tractor was about half off of the highway when I hear squealing tires and saw the cruiser in front of my tractor. I then hit my brakes as both my tractor and the on-coming car made contact and seconds after both the tractor and car came to a stop."

FMCSRs Part 383 sets forth the regulatory requirements for the Commercial Drivers License Standards for the safe operations of commercial motor vehicles. FMCSRs §383.3 is entitled "Applicability" and requires that the rules in this part apply to every person who operates a commercial motor vehicle (CMV) in interstate, foreign or intrastate commerce, to all employers of such persons and to all states.




Mr. Friede made several mistakes in his driving which fell below the standard of care for professional truck drivers.  The standards established for CDL drivers are set forth in the FMCSRs Commercial Drivers License Standards, as well as the CDL Manual, including but not limited to the following:

▸   **Safe Vehicle Control:** The CDL Manual instructs CMV drivers that, "to drive a vehicle safely, you must be able to control its speed and direction."  Mr. Friede failed to properly operate and safely control his CMV as indicated by the numerous factors detailed below, and as set forth in the CDL Manual, and which fell below the standard of care for professional truck drivers.

▸   **Seeing/Proper Lookout:** The CDL Manual instructs CMV drivers that, "to be a safe driver you need to know what is going on all around your vehicle, and not looking properly is a major cause of accidents.  All drivers look ahead, but many don't look far enough ahead.  The importance of looking far enough ahead is because stopping or changing lanes can take a lot of distance, knowing what the traffic is doing on all sides of you is very important.  You need to look well ahead to make sure you have room to make these moves safely.  How far to look.  Most good drivers look at least 12 to 15 seconds ahead. That means looking ahead the distance you will travel in 12 to 15 seconds.  At lower speeds, that's about one block.  At highway speeds it's about a quarter of a mile. Looking 12 to 15 seconds ahead doesn't mean not paying attention to things that are closer.  Good drivers shift their attention back and forth, near and far."  Mr. Friede testified, 'And when I was at Sysco, they did show me the in-cab video, and I still, it was surreal to me, because I, at no point with me turning did I see that trooper coming and think, "Ah, I'm going to turn anyway."  You know what I mean?  It was a surprise to me when it happened.  If you see the video, you can tell I was surprised there was somebody in front of me.  I would have had to have thought that it was okay to turn, because for whatever reason I did not, you know, I did not see a car, let alone a State Highway Patrolman, in front of, or, you know, getting close to me making that left-hand turn.  I'd have to answer that I was not defensive-driving when I took that left-hand turn.  Yes, I failed to keep a proper lookout.  Yes, I know that one of the rules of the road is to maintain a proper lookout.  Regarding what the Smith System said about keeping a proper lookout, it gives you distances to look ahead when you're in town.  You want to look about a block ahead from where you are and when you're on the highway and stuff like that at least a quarter mile, at least, ahead, is what it refers to for, I guess that would be the best, for looking out I guess that would be the best correlation between their system and looking, proper lookout.  Regarding if I violated those parts of the Smith System on this accident, I'd have to say yes, because like I said before, I lacked defensive driving in the sense that whether, whether it wasn't him.'




'If it was a guy in a Corvette doing 120 miles an hour, whether he was speeding or not or whether it was anybody. I failed to defensive-drive, keep a proper lookout, whatever you want to call it. I failed that because I was, you know, distracted for all the different reasons and trying to figure out where I was going, not paying attention to where I was.' Mr. Friede's written statement, as noted above, is contrary to his deposition testimony, as well as the dashcam video that has been produced of the accident taking place. Clearly, according to the dashcam video, Mr. Friede never saw Mr. Miears' vehicle approaching at any point prior to he collision. The dashcam video is evidence that Mr. Friede failed to keep a proper lookout, by focusing on looking to his left at the Yellowstone Valley Inn, and not ensuring the roadway ahead was clear and safe prior to attempting the left-hand turn. The circumstances of the accident indicate that Mr. Friede failed to drive defensively and maintain safe control of his CMV by not keeping a proper lookout, and attempting the left-hand turn when it was not clear and safe to do so, ultimately striking Mr. Miears' vehicle, which fell below the standard of care for professional truck drivers.

▸ **Managing Space - Space Needed to Cross or Enter Traffic:** The CDL Manual instructs CMV drivers that, "to be a safe driver you need space all around your vehicle. When things go wrong, space gives you time to think and to take action. To have space available when something goes wrong, you need to manage space. While this is true for all drivers, it is very important for large vehicles. They take up more space and they require more space for stopping and turning. Be aware of the size and weight of your vehicle when you cross or enter traffic. Here are some important things to keep in mind. Because of slow acceleration and the space large vehicles require, you may need a much larger gap to enter traffic than you would in a car. Before you start across a road, make sure you can get all the way across before traffic reaches you." Mr. Friede testified, 'I'd have to answer I was not defensive-driving when I took that left-hand turn.' After the accident Mr. Friede was issued a citation for 'failed to grant right-of-way to motor vehicle.' As a class A CDL holder, Mr. Friede knew, or should have known the time associated with making left-hand turn maneuvers, and also the dangers associated with those turn maneuvers when not done so in a safe manner. The dashcam video, is evidence that he was not operating his CMV pursuant to the CDL Manual on the date of the accident, by failing to keep a proper lookout and failing to manage the space needed to enter and cross traffic. The circumstances of the accident indicate that Mr. Friede failed to drive defensively and maintain safe control of his CMV by not keeping a proper lookout, by not properly managing the space around his CMV, and attempting the left-hand turn when it was not clear and safe to do so, ultimately colliding with Mr. Miears' vehicle, which fell below the standard of care for professional truck drivers.





▸ **Seeing Hazards:** The CDL Manual instructs CMV drivers that, "a hazard is any road condition or other road user that is a possible danger and that seeing hazards lets you be prepared. You will have more time to act if you see hazards before they become emergencies. Conflicts are hazards and that you are in conflict when you have to change speed and/or direction to avoid hitting someone. Conflicts occur at intersections where vehicles meet." Mr. Frank testified, 'Yes, one of Mr. Friede's strengths was that "he's always in a hurry to take care of customer" as shown on his 30-day coaching form. I would agree that trucking companies must not put profits over the safety of people. By looking at the DriveCam, he (Mr. Friede) was not looking forward. He was looking left to see where to turn into.' Mr. Friede testified, 'I think it may be cause to my distraction. It's hard to have your mind, I guess, on what you're doing when you don't know where you're going, I guess. I guess you could chalk that up to a distraction, because it's, unless you've been driving for a long time, it's a lot harder to keep all that stuff straight and be able to navigate. Yeah, there was a sense of urgency to get the job done. The sense of urgency would be their standard. They wanted you to maintain their standard. Yes, other things had happened and I was behind that day. I want to say my first stop was Dairy Queen. And when I opened the freezer door, 2 pallets fell over. One pallet came completely out of the freezer. So, I mean, that put me behind a lot. And that happened, so I was already disgruntled. To be completely honest, I was pissed when I first left, when I first got to Sysco, because when I saw that packet, when I saw how many stops were on there. Get to that first stop, couple pallets fall over out of the tractor and, or out of the trailer. And so that, I was kind of behind. Most of the stops on that run I already knew, 'cause I've already done that route before, but there was more stops put on there. I don't know what number stop it was, but I delivered to this barbecue, this smoked barbecue place there. And when leaving there my, I got stuck inside the parking lot because of a bunch of people that started coming to eat that day. So when I was delivering, the parking lot starting filling up, and there was no way to get my trailer out, my tractor-trailer out, except for next to that place there's a hotel or something, next to that smokehouse place or whatever. So I was able to go back and go into that parking lot where that hotel was at. And I went to go under the awning, and it seemed like it was high enough. I got out and checked, and it seemed high enough. And needless to say, when I got, I was able to get under it. But there's a lip on the awning, and I got my the stack on my tractor stuck. And so I had to get that taken care of, and that put me behind some more. So by the time I got out from the awning, I can't remember if, I think there was a couple more stops before I headed to the Yellowstone delivery. Yes, based on the circumstances that occurred, I was running off schedule for the schedule that Sysco wanted me to keep. Even without any issues there was no way to do that whole route and make it back because of how many stops. And I think there was over like 1100 pieces or something, so there wasn't enough time to make it back that day.'





'And I didn't know that, 'cause like I said prior, I had done that route before, and I was easily able to make it back to Sysco in one day. And so when I showed up, I didn't have an overnight bag packed, 'cause I wasn't planning on staying overnight. So that was just another issue. You know what I mean? So on top of being way behind the standard, knowing that I was not going to be able to make it back anyway and I wasn't prepared. No, no one at Sysco had instructed me, hey, when things go wrong and I am off schedule, here's what to do. Regarding if I alerted Sysco if I was off schedule, yeah, because I had to call my supervisor with the stack incident, because I had to write a report, you know, because I got stuck under their awning. And so I think when I got back I had to fill out an incident report about the stack. And but when I talked to him then, you know, I told him. I can't remember who I talked to. It wasn't Jack. It was another guy. No, Sysco Montana did not instruct me to deviate or lessen my route to allow everything to get done in a timely manner.' As noted above, Mr. Frank testified that he would agree that trucking companies must not put profits over the safety of people, but then he noted that Mr. Friede was always in a hurry to take care of a customer. Clearly, Mr. Friede had issues at previous stops on the date of the accident, and Sysco was putting profits over safety by hiring and utilizing an entry-level driver. The dashcam video clearly shows that Mr. Friede did not perceive the hazard of making a left-hand turn when it was not clear and safe to do so, by failing to give due attention to the roadway in front of him. Mr. Friede created a hazardous situation for himself and other motorists, including Mr. Miears on June 15, 2015. The circumstances of the accident indicate that Mr. Friede failed to drive defensively and maintain safe control of his CMV by not keeping a proper lookout, by not properly managing the space around his CMV, by not practicing proper hazard perception techniques, and attempting the left-hand turn when it was not clear and safe to do so, ultimately colliding with Mr. Miears' vehicle, which fell below the standard of care for professional truck drivers.

▸ **Distracted Driving:** The CDL Manual instructs CMV drivers that, "whenever you are driving a vehicle and your attention is not on the road, you're putting yourself, other vehicles, and pedestrians in danger. Distracted driving can result when you perform any activity that may shift your full attention from the driving task. Taking your eyes off the road or hand off the steering wheel presents obvious driving risks. Mental activities that take your mind away from driving are just as dangerous. Your eyes can gaze at objects in the driving scene but fail to see them because your attention is distracted elsewhere." Mr. Frank testified, 'Yes, one of Mr. Friede's strengths was that he's always in a hurry to take care of customer, as shown on his 30-day coaching form. I would agree that trucking companies must not put profits over the safety of people. By looking at the DriveCam, he (Mr. Friede) was not looking forward. He was looking left to see where to turn into.'




Mr. Friede testified, 'I think it may be cause to my distraction. It's hard to have your mind, I guess, on what you're doing when you don't know where you're going, I guess. I guess you could chalk that up to a distraction, because it's, unless you've been driving for a long time, it's a lot harder to keep all that stuff straight and be able to navigate.' The circumstances of the accident indicate that Mr. Friede failed to drive defensively and maintain safe control of his CMV by not keeping a proper lookout, by not properly managing the space around his CMV, by not practicing proper hazard perception techniques, and by driving while distracted and attempting the left-hand turn when it was not clear and safe to do so, ultimately colliding with Mr. Miears' vehicle, which fell below the standard of care for professional truck drivers.

▸ **Always Have a Plan:** The CDL Manual instructs CMV drivers that, "you should always be looking for hazards. Continue to learn to see hazards on the road. However, don't forget why you are looking for the hazards, they may turn into emergencies. You look for the hazards in order to have time to plan a way out of any emergency. When you see a hazard, think about the emergencies that could develop and figure out what you would do. Always be prepared to take action based on your plans. In this way, you will be a prepared, defensive driver who will improve your own safety as well as the safety of all road users." The circumstances of the accident indicate that Mr. Friede failed to drive defensively and maintain safe control of his CMV by not keeping a proper lookout, by not properly managing the space around his CMV, by not practicing proper hazard perception techniques, by driving while distracted, and by not having a plan for safely negotiating the left-hand turn when it was not clear and safe to do so, ultimately colliding with Mr. Miears' vehicle, all which fell below the standard of care for professional truck drivers.

FMCSRs §392.2 entitled "Applicable operating rules" requires that, "every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated." Mr. Friede tsetified, 'Yes, I was cited and given a ticket as a result of the crash.' As noted above, Mr. Friede was cited for 'failed to grant right-of-way to motor vehicle' on the date of the accident, and as such, he was not operating his CMV in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated, in violation of FMCSRs §392.2, which is a critical regulation violation indicating a breakdown in management/operational controls.

Part 395 of the FMCSRs sets forth the Hours of Service Regulations. FMCSRs §395.8 requires that motor carriers require drivers prepare a record of duty status for each 24 hours period, and requires that all entries relating to driver's duty status must be current, legible, and in the driver's own handwriting. The Regulatory Guidance to FMCSRs §395.3 states that "carriers permit violations of the hours of service regulations by their employees if they fail to have in place management systems that effectively prevent such violations."



A motor carrier is "liable for violations of the hours of service regulations if it had or should have had the means by which to detect the violations." Implicit in this guidance to Part 395 FMCSRs, especially in the reference to "management systems that effectively prevent such violations" is that the motor carrier needs to audit/review their drivers' logs for compliance with the FMCSRs. Mr. Friede testified, 'When I was driving with Sysco Montana my log was recorded with an ELD. It was electronic.' Mr. Frank testified, 'Regarding what Mr. Friede had been doing in the time between when he was qualified by Sysco Montana to drive a truck on 04/07/15, and the crash, how would we do that, you know, I guess we have some of his logs pulled up, but they're not, I guess I don't know without looking how long they went back and pulled logs for. Oh absolutely, he would have been keeping logs of where he drove.' It is not possible to determine whether Mr. Friede was operating his CMV within his allowed hours of service regulations at the time of the accident, because no driver logs have been produced at this time.

Mr. Kelly testified, 'No, we were not trying to determine the cause of the crash, we were told that the driver turned in front of the highway patrol. Yes, that Mr. Friede turned in front of the highway patrolman. Yes, I believe that's a true statement. Yes, I agree that Mr. Friede's turn in front of the highway patrolman is what caused the crash. Yes, based on my experience, training, and education, I came to conclude this was a preventable crash. Yes, I agree that the responsibility for preventing truck crashes lies first and foremost with the trucking company.' Mr. Frank testified, 'I am assuming we concluded it was a preventable crash. Yes, in my view it's a preventable crash. James Friede caused the crash. By looking at the DriveCam, he was not looking forward. He was looking left to see where to turn into.' Mr. Friede testified, 'Regarding if I admit fault, if you are cited for a ticket and you pay the ticket, isn't that admitted fault? I admit there was fault on my side for sure in the crash. When I signed that ticket, when I paid that ticket, I admitted fault for what that ticket was for, and that ticket they cited me was for failure to yield. And I signed that ticket, and I paid the fine, because whether anybody else admits fault, I know that I, you know, there's a part of me that was. And when I signed that ticket, I admitted fault.'

The FMCSA defines the standard for preventability as follows: "If a driver, who exercises normal judgment and foresight, could have foreseen the possibility of the accident that in fact occurred, and avoided it by taking steps within his control, which would not have risked causing another kind of mishap, the accident was preventable." In judging whether the driver's actions were reasonable, one seeks to determine whether the driver drove defensively and demonstrated an acceptable level of skill and knowledge. This accident was preventable on the part of Sysco and Mr. Friede, as discussed above in this report.




**Conclusion(s):**

It is my opinion, within a reasonable degree of probability in the field of commercial motor vehicle compliance, enforcement and safety, that Sysco failed to have all of the necessary safety management controls in place and functioning to meet the safety fitness standards, to comply with all of the applicable safety regulations and to thereby reduce the risks associated with commercial motor vehicle accidents, pertaining to the operations of Mr. Friede.  It is also my opinion that Sysco and Mr. Friede's actions and/or inactions, as set forth above in this report, demonstrated a conscious disregard for safety of operations, as well as for other motorists, including Mr. Miears.  Compliance with the applicable safety standards, which are established for safe operation and protection of the public, are a clear duty of all CMV operators/drivers and motor carriers.  Additionally, it is my opinion that Sysco, and its driver, Mr. Friede caused and/or contributed to the cause of the accident as detailed above in this report.

My rates for litigation consulting are $350.00 per hour, with a $2,500.00 retainer fee.  I have attached a copy of my resume, which includes a list of my publications, as well as a copy of my fee schedule and list of testimony.

Respectfully submitted,

Whitney G. Morgan
Safety Consultant

P.O. Box 531195/Birmingham, Alabama 35253-1195
2229 First Avenue North/Birmingham, Alabama 35203
Ph. (205) 871-4455/Fax: (205)871-9070

## WHITNEY G. MORGAN
mcscwgm@aol.com

### EDUCATION

Bachelor of Science Degree - Business Administration
Transportation Major
University of Tennessee, Knoxville, TN
Graduated March 1975

### PROFESSIONAL EXPERIENCE

**MOTOR CARRIER SAFETY CONSULTING, INC.**          **March 1983 to Present**
**Birmingham, Alabama**
**Founder and President**

Consult with companies of all types and sizes that operate commercial motor vehicles, as well as shippers and carriers of hazardous materials, with respect to compliance with Title 49, The Code of Federal Regulations Parts 171-180 & 301-399 (Federal Motor Carrier Hazardous Materials and Safety Regulations) as enforced by the U.S. Department of Transportation, Federal Motor Carrier Safety Administration, and adopted by the States.

Work in all areas of management and operations, with special emphasis on the development of effective safety management controls for compliance with CFR Title 49. Establish safety compliance programs designed to improve company safety fitness standards, as well as to reduce highway accidents and incidents through compliance, education and training in all applicable safety and hazardous materials regulations.

Management and driver training programs that can be customized to the needs of the customer, and geared toward compliance with applicable safety and hazardous materials regulations. Driver training is available in the areas of accident avoidance/reduction, defensive driving, decision driving, fuel economy, road testing, train the trainer and proper use of equipment through inspection, repair and preventative maintenance. Conduct audits and safety seminars for managers, supervisors, office staff and drivers. Truck related accident consulting including investigation and litigation consulting services.

Responsible for the overall planning, directing, and implementation of the consulting activities provided by MCSC. As a former U.S. Department of Transportation Special Agent, provide much of the day to day application and interpretation of specific safety and hazardous materials regulations to our customers and staff.




**CHEMICAL SOLVENT COMPANY, INC.**                    **February 1982 to February 1983**
**Birmingham, Alabama**
**Vice President/General Manager**

Industrial water treatment and refrigeration wholesale business.  Responsibilities were initially in
sales, then became responsible for all company operations including office staff, warehouse,
purchasing of equipment and materials, water sample analysis, shipping, receiving and
manufacturing.

Chemical Solvent Company employed five full-time people plus several part-time depending
upon season.  Primary business was in the chemical treatment of industrial boilers and cooling
towers for the prevention of rust, scale and corrosion.

**U.S. DEPARTMENT OF TRANSPORTATION**                    **July 1975 to February 1982**
**FEDERAL HIGHWAY ADMINISTRATION**
**BUREAU OF MOTOR CARRIER SAFETY**
**(Now the Federal Motor Carrier Safety Administration)**
**2121 8th Avenue North, Birmingham, Alabama 35203**
**Special Agent (Credentials Title)**
**Highway Safety Management Specialist (Job Description Title)**
**Region 4 - Southeastern Region - Birmingham, AL (Field Office)**

Trained at the USDOT's Transportation Safety Institute in Oklahoma City, OK.  Initial on-the-
job training from a former Interstate Commerce Commission Safety Investigator, whose father
had been a career ICC Safety Investigator, and who had also been a trucking industry Director of
Safety for five years before coming back to government service with the USDOT.  The ICC
originally had the truck safety regulatory enforcement authority (as a result of the Motor Carrier
Act of 1935) from 1937 (when the Bureau of Motor Carriers became effective) until 1966 when
the USDOT was formed as a result of the Department of Transportation Act.

Assigned the ongoing responsibility for personally administering the Federal Motor Carrier
Safety Program in the State of Alabama (had national authority) to motor carriers and shippers of
all types and sizes.  Independently promoted and enforced motor carrier and hazardous materials
carrier/shipper compliance with the safety and hazardous materials regulations (CFR Title 49)
while functioning within the program objectives and within a largely self-developed and self-
adjusted area work plan, encompassing most of Alabama.  Also worked jointly within Region 4
(Southeast region).

Responsible for developing and implementing an annual work plan for my territory, which
included approximately 3,000 known motor carriers and HM shippers of record (constantly
expanding), consistent with national and regional goals, and emphasis areas geared to address the
most critical problem areas.




## U.S. DEPARTMENT OF TRANSPORTATION (cont'd)

Independently plan and carry out a schedule of periodic safety and hazardous materials compliance reviews of carrier and shipper operations involving in-depth investigation into all areas of compliance required by the Federal Motor Carrier Safety Regulations. Prepared civil and criminal enforcement cases, which resulted in civil forfeiture penalties and criminal prosecutions, which included testifying before grand juries.

Performed thousands of driver and vehicle roadside safety compliance inspections, working closely with various Federal and State enforcement personnel. Performed additional vehicle inspections during compliance reviews of motor carriers.

Conduct in-depth investigations into the causes of highway accidents and hazardous materials incidents involving commercial motor carriers and vehicles. Perform bus/truck accident investigation/reconstruction and analysis of primarily multiple fatality and high property damage accidents. Worked jointly with the National Transportation Safety Board on several accidents.

Provide technical assistance and information, frequently as an organizer or participant in safety meetings, seminars, or training programs on the federal program, motor carrier safety, hazardous materials transportation safety, and other carrier topics to carrier officials and employees, industry representatives, State, county and city law enforcement and emergency response personnel, and others interested in highway safety.

Provide written and/or oral application/interpretation(s) of the federal regulations within the program framework; draft letters, memoranda, and internal reports to respond to questions on a variety of technical subjects; and maintain liaison and effective working relationships with other federal, state, county and city officials involved in truck enforcement and safety.

Kept abreast of industry problems and trends, vehicle technology, changing hazardous materials developments, the activities of other federal, state and local agencies, as well as state regulations relative to motor carrier safety, legal interpretations and court rulings that impact the program.

**U.S. Department of Transportation Training**
**Transportation Safety Institute (TSI)**
**Oklahoma City, Oklahoma**
**336 Hours**

MOTOR CARRIER SAFETY PROGRAM STANDARDIZATION - August 1975
INTERSTATE MOTOR CARRIER NOISE EMISSION COMPLIANCE - October 9-10, 1975
MOTOR CARRIER TRANSPORTATION OF HAZARDOUS MATERIALS -
 FUNDAMENTALS & ADVANCED - November 1975 & October 1976
MOTOR CARRIER SAFETY ENFORCEMENT - February 6-10, 1978

 

**TSI Training (cont'd)**

MOTOR CARRIER ACCIDENT INVESTIGATION FUNDAMENTALS & ADVANCED - May 1977 & November 1978

## <u>ADDITIONAL EXPERIENCE & TRAINING</u>

- ◆ Birmingham Aviation & Hanger One
  Lineman/Flight Line Manager/Pilot
  Drove Aviation Fuel Tank Trucks & Tugs
  Straight Trucks (2 Tankers) and Tractor-Trailer (1 Bulk Tanker)
  Aviation gas 80/100 Octane & JP-4 (Jet Fuel)
  Birmingham, AL - Summers/Holidays 1970 - 1975

- ◆ House Hasson Hardware Wholesale Company
  Loading & Unloading Trucks - Forklift Operator - Spot Trailers
  Knoxville, TN 1972-1973

- ◆ Knoxville Maryville Motor Express
  Loading & Unloading Trucks - Forklift Operator - Spot Trailers
  Knoxville, TN 1973 - 1975

- ◆ Chemical Solvent Company
  Vice President & General Manager
  Forklift Operator - Stocking & Loading/Unloading Trucks
  Birmingham, Alabama 1982-1983

- ◆ Driver Trainer & Safety Supervisor Training
  Certified Instructor - Carl R. Ott, CDT (#58), CSS (#102)
  (Program - National Committee for Motor Fleet Supervisor
  Training - Penn State University)
  Birmingham, Alabama - July & August 1988

- ◆ Trained the Alabama Department of Public
  Safety, State Troopers, Motor Carrier
  Safety Assistance Program Group, Statewide
  Seminars 1988 - State of Alabama & Alabama Trucking
  Association

- ◆ Safety Consultant to the Specialized Carriers & Rigging
  Association 1988/89
  600 Members Worldwide




## ADDITIONAL EXPERIENCE & TRAINING (cont'd)

- ◆ Truck Driver Training - Skid Pad Training
  Schneider National Carriers
  Driver Training Center
  Green Bay, Wisconsin - September 1998

- ◆ Certified Lift Truck Operator and
  Lift Truck Instructor - National Safety
  Council/FLI Learning Systems, Inc.
  Birmingham, Alabama - April 19, 2006

- ◆ Train-the-Trainer Program for NATMI Instructors
  North American Transportation Management Institute
  Instructor - Mike Beaudroux
  Denver, Colorado - July 29-30, 2006

- ◆ Train-the-Trainer Program for Road Athlete System
  Occupational Athletics Health & Safety Systems
  North American Transportation Management Institute
  Instructor - Susan Shapiro, Author
  Denver, Colorado - July 28, 2006

- ◆ Alabama Class A Commercial Drivers License Permit
  Air Brakes - Combination Vehicle - Tank Trailer
  November 2007 to November 2008

- ◆ Performance/Precision Driving School
  Barber Motorsports Park - Leeds, AL
  June 28-29, 2012

- ◆ Masters Performance Driving School
  Barber Motorsports Park - Leeds, AL
  March 17-18, 2018

- ◆ Thorn Valley Safety
  Dayton, OH
  Field Safety Engineer
  Loss Control - Safety Consulting - Site Survey
  March 2018




<u>**MEMBERSHIPS & ASSOCIATIONS**</u>

North American Transportation Management Institute (NATMI)
Alabama Trucking Association
National Safety Council

<u>**PUBLICATIONS/SPEAKING ENGAGEMENTS**</u>

- **Hours of Service**, Overdrive Magazine, October 1989

- **Notification, Reporting and Recording of Accidents**, Overdrive Magazine, Issue unknown

- **Transportation of Hazardous Materials - Driving and Parking Rules**, Overdrive Magazine, Issue unknown

- **D.O.T. Compliance - Questions and Answers**, Overdrive Magazine, Issue unknown

- **Moving Transportation into the 21st Century - Overview of The Transportation Equity Act (PL 105 178)**, Transportation Equipment News, 01/2000

- **A Former Field Agent's Perspective - The New D.O.T. Safety Administration**, Transportation Equipment News, 03/2000

- **Department of Transportation Requirements and Beyond: Minimizing Exposure Through Compliance and Forward Thinking**, Defense Research Institute, 01/2001

- **Federal Motor Carrier Safety Regulations - New Hours of Service Regulations**, Southeastern Motor Carrier Liability Institute, 11/2005

- **Important Federal and State Motor Carrier Safety Regulations**, State Bar of Texas, 11/2005

- **An Introduction to the Federal Motor Carrier Safety Regulations**, Cumberland Law School CLE, 11/2007

- **A Backstage Pass to a Federal Motor Carrier Safety Administration Compliance Review**, State Bar of Texas, 10/2008

- **Avoiding Road Rash: Reducing Transportation Related Risks**, Southern Association of Wholesale Distributors, Southern Leadership Division Meeting, November 2009



P.O. Box 531195/Birmingham, Alabama 35253-1195
2229 First Avenue North/Birmingham, Alabama 35203
Ph. (205) 871-4455/Fax: (205)871-9070

## MCSC, Inc. FEE SCHEDULE – LITIGATION SUPPORT
### *EFFECTIVE:  JANUARY 1, 2017*

**RETAINER FEE**               - $2,500.00 (NON-REFUNDABLE & APPLIED TO THE FINAL BILL)

**HOURLY RATE**                - $350.00 PER HOUR ( BILLED IN 15 MINUTE INCREMENTS); $400.00
                                 PER HOUR (IF LESS THAN 30 DAYS FOR REPORT/DEPOSITION)

**DEPOSITION & TRIAL**         - $350.00 PER HOUR PLUS EXPENSES ($1,400.00 LOCAL MINIMUM,
                                 PAID IN ADVANCE IF OPPOSING ATTORNEY IS RESPONSIBLE)

**WEEKENDS & HOLIDAYS**        - $400.00 PER HOUR (WHEN WORK IS REQUIRED BY ATTORNEY)

**DAYS BLOCKED OUT FOR**       - $1,000.00 PER DAY (IF NOT CANCELED 7 DAYS IN ADVANCE)
**DEPOSITION & TRIAL**

**CLERICAL/STAFF RATE**        - $75.00 PER HOUR (FILE MANAGEMENT, DEPO SUMMARIES);
                                 $100.00 PER (IF LESS THAN 30 DAYS FOR REPORT/DEPOSITION)

**COPIES, FAXES, PRINTING**    - $.25 PER PAGE

**MILEAGE**                    - $0.535 PER MILE (OR IRS ALLOWED - *FUEL COST ADDITIONAL)

*__*NOTE__: All fees are plus expenses for associated costs (airfare, hotel, meals, mileage, rental car, etc.).  Case material received for litigation support services **must** be accompanied by the Retainer Fee, letter of retention, and signed copy of this rate schedule (email to mcscjew@gmail.com & mcscfletcher@gmail.com) for work to begin.  You may not reference MCSC,Inc or disclose anyone from MCSC until after retention.  The retaining law firm is ultimately responsible for the payment of any outstanding fees, otherwise the retainer agreement should be executed by the responsible party. Payment of said fees shall not be subject to, or conditioned upon, any third party's willingness or ability to pay.  Invoices are due upon receipt and are considered delinquent if not paid within thirty (30) days of invoice date.  An 18% annual interest rate will be charged to overdue accounts.  Attorney clients will generally be invoiced for services rendered after deposition, unless otherwise requested, and must be paid prior to trial.  Attorney responsible for notifying MCSC, Inc. as to the case status. Additional costs associated with collection of outstanding balances, including reasonable legal fees, are the responsibility of retaining attorney and/or law firm.  All disputes shall be decided solely and exclusively by courts in Jefferson County, AL.  **Make all payments to: MCSC, Inc.  P.O. Box 531195 Birmingham, AL 35253-1195.  Tax ID Number 63-0841031.  Please do not send 1099's (MCSC, Inc. is a corporation).***

_____          _____
             ***Retaining Attorney***                        ***Case Style***


_____          _____
             ***Law Firm***                             ***Date***

## WHITNEY G. MORGAN - TESTIMONY LIST

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|-------------------|-----------|
| 06/04/15 | STEVEN T. JAFFE<br>7425 PEAK DRIVE<br>LAS VEGAS, NEVADA 89128 | TIMOTHY TIETJEN | STEVE JAFFE | SLAGOWSKI v. CWA |
| 06/12/15 | JOHN WHITAKER<br>KATTEN MUCHIN ROSEMAN<br>525 W. MONROE ST.<br>CHICAGO, ILLINOIS 60661 | BILL KOZOL | JOHN WHITAKER | WILSON v.<br>KIMBERLY-CLARK |
| 06/18/15 | SEAN McEVOY<br>FRIED ROGERS GOLDBERG<br>3560 LENOX RD., SUITE 1250<br>ATLANTA, GEORGIA 30326 | SEAN McEVOY | CHAD LEEPER | DUGAS v. PIPELINE |
| 06/24/15 | WESLEY T. BALL<br>FARRAR & BALL<br>1010 LAMAR, SUITE 1600<br>HOUSTON, TEXAS 77002 | WES BALL | ROGER OPPENHEIM | WILLOUGHBY v.<br>HOME DEPOT |
| 08/06/15 | J. BARTON WARREN<br>WARREN & SIMPSON<br>105 NORTH SIDE SQUARE<br>HUNTSVILLE, ALABAMA 35801 | BARTON WARREN | JAY CLARK<br>DAVID LEE | FAULKNER v.<br>TOMBSTONE |
| 08/07/15 | THOMAS F. CAMELI<br>CAMELI & HOAG, PC<br>20 S. CLARK ST., #1800<br>CHICAGO, ILLINOIS 60603 | CHRISTOPHER NOREM | TOM CAMELI | KUSTA v. TEWS &<br>CANNONBALL |
| 08/12/15 | WESLEY T. BALL<br>FARRAR & BALL<br>1010 LAMAR, SUITE 1600<br>HOUSTON, TEXAS 77002 | WES BALL | ROGER OPPENHEIM | WILLOUGHBY v.<br>HOME DEPOT (T) |
| 08/18/15 | DAVID DOBBS<br>DOBBS & TITTLE, PC<br>3311 WOODS BLVD.<br>TYLER, TEXAS 75707 | DAVID DOBBS<br>PAUL BOYD | ANDREW MORSMAN | THOMAS v. WERNER |
| 08/24/15 | JONATHAN HALPERIN<br>HALPERIN LAW CENTER<br>5225 HICKORY PARK DRIVE<br>GLEN ALLEN, VIRGINIA 23059 | JONATHAN HALPERIN | SEAN PATRICK | WHITAKER v. CER |
| 08/26/15 | JEANMARIE WHALEN<br>SLAWSON, CUNNINGHAM<br>2401 PGA BLVD., SUITE 140<br>PALM BEACH, FLORIDA 33410 | JEANMARIE WHALEN | HOWARD HOLDEN | SPENCER v. AJP (DH) |
| 08/31/15 | ROBERT PAVICH<br>PAVICH LAW GROUP<br>20 S CLARK ST., SUITE 700<br>CHICAGO, ILLINOIS 60603 | ROBERT PAVICH | JAMES ELLMAN | JASINSKI v. BTT |
| 09/02/15 | STEPHEN W. SHOULTZ<br>BUTTON LAW FIRM<br>900 JACKSON ST., SUITE 340<br>DALLAS, TEXAS 75202 | STEVE SHOULTZ | JARAD KENT | HOWINGTON v. FFE<br>(T) |
| 09/11/15 | BISHOP BARTONI<br>CLARK HILL, PC<br>500 WOODWARD AVE<br>SUITE 3500<br>DETROIT, MICHIGAN 48226 | JENNIFER DAMICO | BISHOP BARTONI | ROBERGE v.<br>WERNER |
| 09/17/15 | COLIN H. DUNN<br>CLIFFORD LAW OFFICES<br>120 N. LASALLE, 31ST FLOOR<br>CHICAGO, ILLINOIS 60602 | COLIN DUNN | RICK KENYON | MORANO v. BLACK<br>HORSE CARRIERS |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|--------------------|-----------|
| 09/30/15 | THOMAS F. CAMELI<br>CAMELI & HOAG, PC<br>20 S. CLARK ST., #1800<br>CHICAGO, ILLINOIS 60603 | CHRISTOPHER NOREM | TOM CAMELI | KUSTA v. TEWS &<br>CANNONBALL (T) |
| 10/07/15 | BRYAN CAPPS<br>LAW OFFICE STEPHEN BURROUGHS<br>9111 CROSS PARK DR., SUITE E-100<br>KNOXVILLE, TENNESSEE 37923 | BRYAN CAPPS | ADAM RUST | HERMES v. MHM |
| 10/09/15 | PAULA WYATT<br>WYATT LAW FIRM<br>70 NE LOOP 410, SUITE 725<br>SAN ANTONIO, TEXAS 78216 | PAULA WYATT<br>JAMES PERRIN | CLARK ASPY | ROBERTS v. JESSUP |
| 10/14/15 | RONALD DIEGEL<br>MURPHY & GRANTLAND<br>4406-B FORREST DRIVE<br>COLUMBIA, SOUTH CAROLINA 29206 | CHARLES WHETSTONE<br>CHERYL PERKINS | RON DIEGEL<br>JASON LUTHER | TERRY v. ROSEDALE |
| 10/16/15 | JOSEPH POWER<br>POWER ROGERS & SMITH<br>70 W MADISON ST., 55TH FLOOR<br>CHICAGO, ILLINOIS 60602 | JOE POWER | WILLIAM RYAN | VASIC v. EXPRESSIMI |
| 10/29/15 | JOHN WESLEY<br>WESLEY McGRAIL & WESLEY<br>88 NE EGLIN PRKWAY<br>FT WALTON BEACH, FLORIDA 32548 | JOHN WESLEY | JOHN FITE | ALDERMAN v. MBM |
| 11/06/15 | JOHN DAVID HART<br>LAW OFFICES OF<br>201 MAIN ST., SUITE 1720<br>FT. WORTH, TEXAS 76102 | JOHN HART | MIKE WINCHESTER | SHEFFER v.<br>BLUEBONNET (T) |
| 11/17/15 | BLAIR DURHAM<br>BART DURHAM LAW FIRM<br>404 JAMES ROBERTSON PRKWY<br>1712 PARKWAY TOWERS<br>NASHVILLE, TENNESSEE 37219 | BLAIR DURHAM<br>MATT WRIGHT | LEE PIOVARCY | CRAYTON v.<br>ANGELICA |
| 12/01/15 | MICHAEL MAHER<br>MAHER LAW FIRM<br>631 W. MORSE BLVD.<br>SUITE 200<br>WINTER PARK, FLORIDA 32789 | MIKE MAHER<br>FRANK EIDSON | CHRIS SCHUSTER | BRENNAN v. BEYEL |
| 12/08/15 | HERIBERTO RAMOS<br>RAMOS & ASSOCIATES<br>TWO RIVERWAY, SUITE 1770<br>HOUSTON, TEXAS 77056 | HERIBERTO RAMOS | LANCE OLINDE | SOLIS v. RSK |
| 12/11/15 | COURTNEY MORGAN<br>MORGAN & MEYERS<br>3200 GREENFIELD, SUITE 260<br>DEARBORN, MICHIGAN 48120 | COURTNEY MORGAN | PETER ANGELAS | PALMER v. FEDEX |
| 12/17/15 | HENRY BLACKMON<br>HASTINGS LAW FIRM<br>P.O. DRAWER 2587<br>CORPUS CHRISTI, TEXAS 78403 | HENRY BLACKMON | MARK STRANDMO | PENA v. ROSE ROCK |
| 01/07/16 | THOMAS COWEN<br>HOBLIT FERGUSON DARLING<br>BANK OF AMERICA PLAZA<br>300 CONVENT ST. SUITE 1450<br>SAN ANTONIO, TEXAS 78205 | TOM COWEN | TRAEGER MACHETANZ | ASSET v. TRAILBOSS |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|-------------------|-----------|
| 01/28/16 | F. THOMAS CONWAY<br>CONWAY LAW OFFICE<br>239 S. FIFTH ST., SUITE 1800<br>LOUISVILLE, KENTUCKY 40202 | TOM CONWAY | JACK STRAUCH | FRENCH v. HOLLAND |
| 02/03/16 | J. BARTON WARREN<br>WARREN & SIMPSON<br>105 NORTH SIDE SQUARE<br>HUNTSVILLE, ALABAMA 35801 | BARTON WARREN | JAY CLARK<br>DAVID LEE | FAULKNER v.<br>TOMBSTONE (T) |
| 02/12/16 | DAVID RUMLEY<br>WIGINGTON RUMLEY DUNN<br>& BLAIR<br>123 NORTH CARRIZO STREET<br>CORPUS CHRISTI, TEXAS 78401 | DAVID RUMLEY | RICK ESPEY | TALAMANTES v.<br>CREST |
| 02/19/16 | SEAN P. DRISCOLL<br>CLIFFORD LAW OFFICES<br>120 N LASALLE STREET<br>CHICAGO, ILLINOIS 60602 | SEAN DRISCOLL | BRIAN NASH | MOSSON v. SEPTRAN |
| 02/23/16 | JASON L. CRAWFORD<br>DAUGHTERY CRAWFORD & BROWN<br>1430 WYNNTON ROAD<br>COLUMBUS, GEORGIA 31902 | JASON CRAWFORD | JAMES CARLESON | BENNETT v.<br>SUMMERFORD |
| 03/10/16 | JOSEPH V. CAMERLENGO<br>COKER SCHICKEL SORENSON<br>136 EAST BAY STREET<br>JACKSONVILLE, FLORIDA 32202 | JOE CAMERLENGO | GANESH CHATANI<br>JEFFREY GLASSMAN | RAWLING v. FUEL<br>SOUTH & HESS |
| 03/14/16 | THOMAS COWEN<br>HOBLIT FERGUSON DARLING<br>BANK OF AMERICA PLAZA<br>300 CONVENT ST, SUITE 1450<br>SAN ANTONIO, TEXAS 78205 | TOM COWEN | TRAEGER MACHETANZ | ASSET v. TRAILBOSS<br>(T) |
| 03/22/16 | J. ANTHONY DELCAMPO<br>DELCAMPO & GRAYSON, LLC<br>5455 CHAMBLEE DUNWOODY ROAD<br>DUNWOODY, GEORGIA 30338 | TONY DELCAMPO | KEVIN SHIRES | SORIA v. HATCHER |
| 03/24/16 | AMPARO GUERRA<br>WINSTEAD, PC<br>1100 JP MORGAN CHASE TOWER<br>600 TRAVIS STREET<br>HOUSTON, TEXAS 77002 | AMPARO GUERRA | PATRICK SMITH<br>BRUCE LINDSEY<br>AMANDA HILTY | AIR LIQUIDE v.<br>HANSA MEYER |
| 04/05/16 | CHRISTINA CROW<br>JINKS CROW & DICKSON, PC<br>P.O. BOX 350<br>UNION SPRINGS, ALABAMA 36089 | CHRISTINA CROW | ANDY ANDERSON | MAY v. TANGO |
| 04/07/16 | JOSEPH D. ZOPOLSKY<br>GLAST PHILLIPS & MURRAY<br>14801 QUORUM DRIVE, SUITE 500<br>DALLAS, TEXAS 75254 | GREG TEETER | JOE ZOPOLSKY | CASTILLO v.<br>CAMERON |
| 04/13/16 | JOHN C. MILLBERG<br>MILLBERG GORDON STEWART<br>1101 HAYNES ST., SUITE 104<br>RALEIGH, NORTH CAROLINA 27604 | JOHN MILLBERG | SHANNON BARROW | CSXT v. TURNER |
| 04/15/16 | MICHAEL D. MATTEUZZI<br>MATTEUZZI & BROOKER<br>10111 WEST 105TH ST.<br>OVERLAND PARK, KANSAS 66212 | TYSON KETCHUM | MIKE MATTEUZZI | SMITH v. GD TRANS |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|---|---|---|---|---|
| 04/18/16 | L. LANE ROY<br>BROWN SIMMS<br>600 JEFFERSON ST., SUITE 800<br>LAFAYETTE, LOUISIANA 70501 | GINA TUTTLE | LANE ROY | READY v. VICTORY PACKAGING |
| 05/06/16 | JIM S. ADLER<br>JIM ADLER & ASSOCIATES<br>3D INTERNATIONAL TOWER<br>1900 W LOOP SOUTH, 20TH FLOOR<br>HOUSTON, TEXAS 77027 | JIM ADLER<br>TREY SMITH | JOHN KOVACK | DUMAS v. LEEWAY |
| 06/08/16 | ROBERT ROSS<br>ROSS FELLER CASEY, LLP<br>ONE LIBERTY PLACE<br>1650 MARKET ST., SUITE 3450<br>PHILADELPHIA, PENNSYLVANIA 19103 | ROB ROSS<br>JOHN PINTO | ANTHONY LUCIDO | SKINNER v. T.M. MORLEY (T) |
| 06/16/16 | JIM S. ADLER<br>JIM ADLER & ASSOCIATES<br>3D INTERNATIONAL TOWER<br>1900 W LOOP SOUTH. 20TH FLOOR<br>HOUSTON, TEXAS 77027 | TREY SMITH | JOHN KOVACK | DUMAS v. LEEWAY (T) |
| 06/21/16 | JASON MEDINA<br>GLASHEEN, VALLES & INDERMAN<br>1302 TEXAS AVENUE<br>LUBBOCK, TEXAS 79401 | JASON MEDINA | EARL DEBRINE | SKROPKA v. UNITED |
| 07/05/16 | RICHARD MANN<br>TED B. LYON & ASSOC<br>18601 LYNDON JOHNSON FRW<br>SUITE 525<br>MESQUITE, TEXAS 75150 | RICHARD MANN | FRANK CATALANO<br>JERRY BUTLER | SHELTON v. MARTIN |
| 07/12/16 | KENNETH M. PERRY<br>BRADLEY ARANT<br>1819 FIFTH AVE NORTH<br>BIRMINGHAM , ALABAMA 35203 | BEN BAKER | KEN PERRY | CAIL v. BRIDGESTONE |
| 07/19/16 | PETER D. GRUENINGER<br>LEWIS BRISBOIS<br>6715 ACADEMY RD. NE<br>ALBUQUERQUE, NEW MEXICO 87109 | DAVID JARAMILLO | PETE GRUENINGER | PERRY v. IMC |
| 07/21/16 | JILL SMITH<br>FRANKE SCHULTZ & MULLEN<br>8900 WARD PARKWAY<br>KANSAS CITY, MISSOURI 64114 | ERIC BELK | JILL SMITH | GRESHAM v. DANIEL ORCHARD |
| 08/01/16 | KENNETH M. PERRY<br>BRADLEY ARANT<br>1819 FIFTH AVE NORTH<br>BIRMINGHAM , ALABAMA 35203 | BEN BAKER | KEN PERRY | THOMPSON v. BRIDGESTONE |
| 08/05/16 | HENRY BLACKMON<br>HASTINGS LAW FIRM<br>101 N. SHORELINE<br>SUITE 216<br>CORPUS CHRISTI, TEXAS 78401 | HENRY BLACKMON | DARRYL BARGER | GARCIA v. ENTERPRISE |
| 08/09/16 | DENNIS GOLDASICH<br>GOLDASICH & ASSOCIATES<br>2100 THIRD AVE N, SUITE 700<br>BIRMINGHAM, ALABAMA 35203 | DENNIS GOLDASICH<br>ANDREW FULK | JOHN BAKER | GADDIS v. PENSKE |
| 08/24/16 | CHARLES MALONE<br>BUTLER SNOW<br>150 3RD AVE S. SUITE 1600<br>NASHVILLE. TENNESSEE 37201 | CHARLES MALONE<br>LAUREN PATTEN | LARRY SUTTER<br>BRITT PHILLIPS | JOHNSON v. CRETE |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|------------------|-----------|
| 08/26/16 | JAMES P. HANRATTY<br>MARSHALL DENNEHEY<br>200 W FORSYTH, SUITE 1400<br>JACKSONVILLE, FLORIDA 32202 | DAVID GUILEY | JAMES HANRATTY | NELSON v. LINK AMERICA |
| 08/27/16 | THOMAS P. WILLINGHAM<br>3800 COLONADE PKY, SUITE 330<br>BIRMINGHAM, ALABAMA 35243 | TOM WILLINGHAM | MITCH FROST | GOODWIN v. REYNOLDS |
| 08/29/16 | FRED D. BURKEY<br>BURKEY LAW FIRM<br>1201 PEACHTREE ST., SUITE 2000<br>ATLANTA, GEORGIA 30361 | FRED BURKEY | JOHN AUSTIN | WIEDEMAN v. H&F |
| 09/01/16 | L. LANE ROY<br>BROWN SIMS<br>600 JEFFERSON ST., SUITE 800<br>LAFAYETTE, LOUISIANA 70501 | GINA TUTTLE | LANE ROY | READY v. VICTORY PACKAGING (T) |
| 09/15/16 | PAUL D. BARBER<br>BARBER & BORG, LLC<br>3816 CARLISLE BLVD<br>ALBUQUERQUE, NEW MEXICO 87190 | PAUL BARBER | SETH SPARKS | GUTTUSO v. SAIA (T) |
| 09/30/16 | CHRISTINA D. CROW<br>JINKS CROW & DICKSON, PC<br>P.O. BOX 350<br>UNION SPRINGS, ALABAMA 36089 | CHRISTINA CROW | CHARLES HUDSON | MARTIN v. SEXTON |
| 10/06/17 | DAVID M. LEIBOWITZ<br>LAW OFFICES OF<br>700 N. ST. MARY'S ST.<br>SUITE 1750<br>SAN ANTONIO, TEXAS 78205 | DAVID LEIBOWITZ | ERIK KRUDOP | COBARRUBIAS v. GULFMARK |
| 10/13/16 | CARLOS SILVA<br>SILVA & SILVA<br>236 VALENCIA AVENUE<br>CORAL GABLES, FLORIDA 33134 | CARLOS SILVA | EDWIN MORTEL | ANGULO v. RANGER |
| 10/25/16 | EDWIN S. GAULT<br>FORMAN WATKINS<br>200 S. LAMAR ST., SUITE 100<br>JACKSON, MISSISSIPPI 39225 | LABARRON BOONE | EDWIN GAULT<br>CAROLINE UPCHURCH | WRIGHT v. PITTS, MERRITT & VOLVO |
| 11/04/16 | MICHAEL GALLAGHER<br>GALLAGHER LAW FIRM<br>2905 SACKETT STREET<br>HOUSTON, TEXAS 77098 | MICHAEL GALLAGHER<br>BOYD SMITH | ALEX STELLY | FITZGERALD v. TURNAROUND |
| 11/18/16 | MIMI R. ARTHUR<br>FORMAN WATKINS & KRUTZ<br>200 S. LAMAR ST., SUITE 100<br>JACKSON, MISSISSIPPI 39225 | EULIS SIMIEN | MIMI ARTHUR | BAREFOOT v. WEYERHAUSER |
| 12/17/16 | THOMAS P. WILLINGHAM<br>POPE McGLAMRY, PC<br>3800 COLONADE PRKY<br>SUITE 330<br>BIRMINGHAM, ALABAMA 35243 | TOM WILLINGHAM | JOHN DODSON | HUIE v. OSBORN |
| 12/20/16 | ROBERT PAVICH<br>PAVICH LAW GROUP<br>30 W MONROE STREET<br>CHICAGO, ILLINOIS 60603 | ROBERT PAVICH<br>JOHN PAVICH | THOMAS BRADDY | KRUPNIKOVIC v. STERLING |
| 01/06/17 | TOM COLEMAN<br>SMITH SPIRES & PEDDY<br>2015 SECOND AVE NORTH<br>BIRMINGHAM, ALABAMA 35203 | MIKE BEARD | TOM COLEMAN | CALHOUN v. SCHNITZER |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|--------------------|-----------|
| 01/17/17 | KATHY DAVIS<br>CARR ALLISION<br>100 VESTAVIA PARKWAY<br>BIRMINGHAM, ALABAMA 35216 | LABARRON BOONE | KATHY DAVIS | WRIGHT v. MERRITT (T) |
| 01/24/17 | PAULA WYATT<br>WYATT LAW FIRM<br>70 NE LOOP 410, SUITE 725<br>SAN ANTONIO, TEXAS 78216 | PAULA WYATT | MICHAEL BECKELMAN | DIAZ v. BLUECOAST |
| 02/24/17 | H.E. CHIP NIX<br>ATTORNEY AT LAW<br>7505 HALCYON POINT DR.<br>MONTGOMERY, ALABAMA 36117 | CHIP NIX | ROBERT COOPER | BRASHER v. T&B CHIPPING |
| 03/07/17 | CHRISTOPHER NOREM<br>PARENTE & NOREM<br>221 N LASALLE ST<br>27TH FLOOR<br>CHICAGO, ILLINOIS 60601 | CHRIS NOREM | WILLIAM RYAN | VOLKOV v. C.H. ROBINSON |
| 03/21/17 | SEAN HOULIHAN<br>POWER ROGERS & SMITH<br>70 W MADISON ST., 55TH FLOOR<br>CHICAGO, ILLINOIS 60602 | SEAN HOULIHAN | ANDY SEIBER | INMAN v. HOWE |
| 04/07/17 | CHAD INDERMAN<br>GLASHEEN, VALLES & INDERMAN<br>1302 TEXAS AVENUE<br>LUBBOCK, TEXAS 79408 | CHAD INDERMAN | ANDREW STAMPER | HARE v. PRESS |
| 04/21/17 | SETH DIAMOND<br>CHARLES C. TATUM, PC<br>105 19TH STREET WEST<br>JASPER, ALABAMA 35502 | SETH DIAMOND | MATT WILLIAMS | ADAMS v. OLD DOMINION |
| 05/10/17 | DAVID M. LEIBOWITZ<br>LAW OFFICES OF<br>700 N. ST. MARY'S ST.<br>SUITE 1750<br>SAN ANTONIO, TEXAS 78205 | DAVID LEIBOWITZ | ERIK KRUDOP | COBARRUBIAS v. GULFMARK (DH)(T) |
| 05/12/17 | SEAN HOULIHAN<br>POWER ROGERS & SMITH<br>70 W MADISON ST., 55TH FLOOR<br>CHICAGO, ILLINOIS 60602 | SEAN HOULIHAN | ANDY SEIBER | INMAN v. HOWE (T) |
| 05/16/17 | FRED BURKEY<br>BURKEY LAW FIRM<br>1389 PEACHTREE RD.<br>SUITE 201<br>ATLANTA, GEORGIA 30309 | FRED BURKEY | BARBARA MARSCHALK | MORNAY v. SOUTHEASTRANS |
| 05/22/17 | RANDALL HAYNES<br>MORRIS HAYNES WHEELES<br>KNOWLES & NELSON<br>3500 COLONNADE PARKWAY<br>SUITE 100<br>BIRMINGHAM, ALABAMA 35243 | RANDALL HAYNES | PHILLIP LUKE | FUCHSBERGER v. LOVE'S TRAVEL |
| 05/30/17 | BRANT STOGNER<br>ABRAHAM WATKINS<br>800 COMMERCE STREET<br>HOUSTON, TEXAS 77002 | BRANT STOGNER | TORY TAYLOR | HOLIDAY v. DOT TRANSPORTATION |
| 06/06/17 | RICK M. SIMSES<br>COTTEN SCHMIDT & ABBOTT<br>25025 N. I-45, SUITE 410<br>THE WOODLANDS, TEXAS 77380 | DAVID HAMMITT | RICK SIMSES | JONES v. FMCT |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|---|---|---|---|---|
| 06/09/17 | JORDAN JONES<br>MICHIGAN AUTO LAW<br>30101 NORTHWESTERN HWY<br>FARMINGTON HILLS, MICHIGAN 48334 | JORDAN JONES | KEVIN PLAGENS | KNOLL v. ATLAS |
| 06/13/17 | DAN W. MUNLEY<br>MUNLEY LAW<br>227 PENN AVE<br>SCRANTON, PENNSYLVANIA 18503 | DAN MUNLEY | GARY STEWART | BOTEY v. GREEN (T) |
| 06/16/17 | PAUL BARBER<br>BARBER & BORG<br>3816 CARLISLE BLVD<br>SUITE C<br>ALBUQUERQUE, NEW MEXICO 87107 | PAUL BARBER<br>MARK CARUSO | LISA ORTEGA<br>DARSEY CARROLL | WATSON v. CRST |
| 06/22/17 | TOM CAMELI<br>CAMELI & HOAG<br>105 W ADAMS ST., SUITE 1430<br>CHICAGO, ILLINOIS 60603 | MICHAEL MEAD | TOM CAMELI<br>TOM OSRAN | GILLESPIE v. TRAIL QUEST |
| 07/26/17 | CLAY WHITTAKER<br>COLE SCOTT & KISSANE<br>715 S PALAFOX STREET<br>PENSACOLA, FLORIDA 32502 | FLINT LIDDON | CLAY WHITTAKER | WILLIAMS v. PRECISION SAND |
| 08/04/17 | LOLETHA HALE<br>HALE LAW FIRM<br>P.O. BOX 793<br>JONESBORO, GEORGIA 30237 | LOLITHA HALE | JONATHAN ADELMAN | WATKINS v. J.V. ROCKWELL |
| 08/24/17 | BRAD STARK<br>FISHER STARK, PA<br>172 ASHELAND AVENUE<br>ASHVILLE, NORTH CAROLINA 28801 | BRAD STARK | MARK KURDYS | McAFEE v. HOWARD BAER |
| 09/07/17 | TIM TATE<br>TATE LAW OFFICES, PC<br>5001 SPRING VALLEY RD<br>SUITE 400E<br>DALLAS, TEXAS 75244 | TIM TATE<br>MICKY DAS | ALEX BELL | CHOHAN v. P&O |
| 09/19/17 | STEVEN T. JAFFE<br>HALL JAFFE & CLAYTON<br>7425 PEAK DRIVE<br>LAS VEGAS, NEVADA 89128 | GLENN PATERNOSTER | STEVE JAFFE | GILLMAN v. NATINA |
| 09/26/17 | PAULA WYATT<br>WYATT LAW FIRM<br>21 LYNN BATTS LANE<br>SUITE 10<br>SAN ANTONIO, TEXAS 78212 | PAULA WYATT<br>JAMES PERRIN | PAUL MURPHY | BORREGO v. FEDEX |
| 09/29/17 | EDWARD BARKER<br>HUNTER BARKER & FANCHER<br>555 N. CARANCAHUA ST.<br>SUITE 1200<br>CORPUS CHRISTY, TEXAS 78401 | CURTIS FITZGERALD | ED BARKER | CAMACHO v. ROYWELL |
| 10/05/17 | MICHAEL MOSS<br>LEWIS BRISBOIS<br>633 W. 5TH ST., SUITE 4000<br>LOS ANGELES, CALIFORNIA 90071 | ROBERT HAMPARYAN | MICHAEL MOSS | PADILLA v. LABOR READY |
| 10/19/17 | TERRY JACKSON<br>600 EDGEWOOD AVE<br>ATLANTA, GEORGIA 30312 | TERRY JACKSON | MATT BRANCH | PRICE v. SOUTHERN OIL |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|---|---|---|---|---|
| 10/27/17 | JEROME PRATHER<br>GARMER & PRATHER<br>141 N. BROADWAY<br>LEXINGTON, KENTUCKY 40507 | JEROME PRATHER | JOHN DUNN | WHITE v. TSI |
| 11/09/17 | PAULA WYATT<br>WYATT LAW FIRM<br>21 LYNN BATTS LN, SUITE 10<br>SAN ANTONIO, TEXAS 78218 | PAULA WYATT | MIKE TERRY | SMITH v. STC |
| 11/16/17 | ERIC MARYE<br>THE MARYE LAW FIRM, P.C.<br>2619 HIBERNIA STREET<br>DALLAS, TEXAS 75204 | ERIC MARYE | CLAYTON DEVIN | SMITH/ROBERTSON<br>v. MARIO SINACOLA |
| 11/21/17 | ALEXANDER BEGUM<br>BEGUM LAW GROUP<br>2401 WILDFLOWER DRIVE<br>SUITE B<br>BROWNSVILLE, TEXAS 78526 | ALEX BEGUM | KEVIN MICKITS | PECHE v.<br>ROADRUNNER |
| 11/29/17 | WILLIAM CORZO<br>NORMAND LAW<br>62 WEST COLONIAL DRIVE<br>SUITE 209<br>ORLANDO, FLORIDA 32801 | WILLIAM CORZO | PAUL JONES | NUNEZ v. BEYEL |
| 12/05/17 | MICHAEL STANLEY<br>STANLEY LAW<br>230 WESTCOTT<br>SUITE 120<br>HOUSTON, TEXAS 77007 | MICHAEL STANLEY | ROGER OPPENHEIM | HERNANDEZ v.<br>KNIGHT |
| 12/12/17 | ALEXANDER BEGUM<br>BEGUM LAW GROUP<br>2401 WILDFLOWER DR.<br>SUITE B<br>BROWNSVILLE, TEXAS 78526 | ALEX BEGUM | WILLIAM CHAMBLEE | GARCIA v. FFE |
| 01/18/18 | F. EDWARD BARKER<br>HUNTER BARKER FANCHER, LLP<br>555 N. CARANCAHUA, SUITE 1200<br>CORPUS CHRISTI, TEXAS 78401 | RUSSELL ENDSLEY | ED BARKER | MONKS v. ABC |
| 01/23/18 | QUINTON BROGDON<br>CRAIN LEWIS BROGDON, LLP<br>3400 CARLISLE ST., SUITE 200<br>DALLAS, TEXAS 75204 | QUINTON BROGDON | CURT SCUDDER | BRISTOW v. GCSM |
| 01/30/18 | MIKE HAMLIN<br>PITZER SNODGRASS<br>100 S 4TH ST., SUITE 400<br>ST. LOUIS, MISSOURI 63102 | RUDY VEIT<br>GARY BURGER | MIKE HAMLIN | LACY v. CRST |
| 02/01/18 | BARTON WARREN<br>WARREN & SIMPSON<br>105 NORTH SIDE SQUARE<br>HUNTSVILLE, ALABAMA 35801 | BARTON WARREN | JAMES POTTS | BEATTIE v. TIMMS |
| 02/06/18 | JOSEPH SHANNON<br>SHANNON LAW GROUP<br>HOBSON PROFESSIONAL CNTR<br>3550 HOBSON RD., SUITE 203<br>CHICAGO, ILLINOIS 60517 | JOE SHANNON | JORDAN TANK | ROBERTSHAW v.<br>MAURER |
| 02/13/18 | JOEY GONZALEZ<br>WATTS GUERRA, LLP<br>4 DOMINION DR., SUITE 100<br>SAN ANTONIO, TEXAS 78257 | JOEY GONZALEZ | BRAD DOUGLAS | MALDONADO v.<br>ARNOLD TRANS |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|---|---|---|---|---|
| 02/14/18 | PAULA A. WYATT<br>WYATT LAW FIRM<br>21 LYNN BATTS LN, SUITE 10<br>SAN ANTONIO, TEXAS 78218 | PAULA WYATT<br>JAMES PERRIN | MIKE MYERS | McDOWELL v. UPS |
| 02/20/18 | ANTHONY W. PARKER<br>PATTON & RYAN<br>330 N. WABASH, SUITE 3800<br>CHICAGO, ILLINOIS 60611 | PHILLIP CORBY | TONY PARKER<br>RYAN REGULY | CHENG v.<br>GREYHOUND |
| 03/01/18 | PETER SUMMERILL<br>DEWSNUP, KING, OLSEN<br>36 SOUTH STATE ST., SUITE 2400<br>SALT LAKE CITY, UTAH 84111 | PETER SUMMERILL | PAUL BELNAP<br>TERRY PLANT | COLLINS v. WAXIE'S |
| 03/09/18 | CHANCE McMILLAN<br>GARCIA & McMILLAN<br>440 LOUISIANA ST. SUITE 1200<br>HOUSTON, TEXAS 77002 | CHANCE McMILLAN | PAUL MILLER | HARVEY v. DMG |
| 03/16/18 | BRANT STOGNER<br>ABRAHAM WATKINS<br>800 COMMERCE STREET<br>HOUSTON, TEXAS 77002 | BRANT STOGNER | TORY TAYLOR | HOLIDAY v. DOT<br>TRANSPORTATION<br>(T) |
| 03/20/18 | AARON BROUSSARD<br>BROUSSARD & HART<br>1301 COMMON STREET<br>LAKE CHARLES, LOUISIANA 70601 | AARON BROUSSARD | JULIE KAMMER<br>ERIC ROAN | WESTLUND v. CCC |
| 03/23/18 | TREY SMITH<br>JIM ADLER & ASSOC<br>1900 W LOOP S, 20TH FLOOR<br>HOUSTON, TEXAS 77027 | TREY SMITH | DAN KARP | TRUJILLO v.<br>TREJCEK |
| 03/29/18 | JOEY GONZALEZ<br>WATTS GUERRA, LLP<br>4 DOMINION DR., SUITE 100<br>SAN ANTONIO, TEXAS 78257 | JOEY GONZALEZ | ALISON COLVIN | HUDSPETH v.<br>ALVAREZ |
| 04/10/18 | FRED D. BURKEY<br>BURKEY LAW FIRM<br>1201 PEACHTREE ST., SUITE 2000<br>ATLANTA, GEORGIA 30361 | FRED BURKEY | JOHN AUSTIN | WIEDEMAN v. H&F<br>(T) |
| 04/17/18 | JACOB MAPLES<br>RICHARDSON & MAPLES<br>301 E. HOLMES AVE., SUITE 100<br>HUNTSVILLE, ALABAMA 35801 | JACOB MAPLES | ROBERT COOPER | ADAMS v. CARRUTH<br>TRUCKING |
| 04/27/18 | KEVIN GIDDENS<br>BOYD & BOYD<br>1215 PURIT PLACE<br>TYLER, TEXAS 75703 | KEVEN GIDDENS<br>PAUL BOYD | FRANK CATALANO | MOORE v. MYA |
| 05/01/18 | GEORGE MORRIS<br>CABINISS JOHNSTON<br>2001 PARK PLACE, SUITE 700<br>BIRMINGHAM, ALABAMA 35203 | GEORGE MORRIS<br>CRAWFORD McGIVEREN | EDGAR ELLIOT | LINTON v. COCA-<br>COLA |
| 05/09/18 | HUBERT BROWN<br>BROWN & BROWN<br>1102 E TENNESSEE ST.<br>TALLAHASSEE, FLORIDA 32308 | HUBERT BROWN | JOSEPH KISSANE | PATTERSON v. L&R<br>CONTRACTING |
| 05/17/18 | CHRISTOPHER RIGLER<br>THOMPSON COE<br>700 N. PEARL ST., 25TH FL<br>DALLAS, TEXAS 75201 | KEVIN LILES | CHRIS RIGLER | PORTILLO v. LESNA |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|------------------|-----------|
| 05/22/18 | JIM S. ADLER<br>JIM ADLER & ASSOCIATES<br>1900 W LOOP S, 20TH FL<br>HOUSTON, TEXAS 77027 | JIM ADLER<br>TREY SMITH | ERIC BENTON | SIERRA v. SAIA |
| 05/30/18 | KACIE STARR<br>VILLAREAL & BEGUM<br>5826 IH 10 WEST<br>SAN ANTONIO, TEXAS 78201 | KACIE STARR | JEFF RYAN | PORTER v. PFG |
| 06/01/18 | KEVIN S. TAYLOR<br>TAYLOR ANDERSON<br>1670 BROADWAY, SUITE 900<br>DENVER, COLORADO | BEN BRODHEAD<br>JIM NEUBERGER | KEVIN TAYLOR<br>JOSEPH WIESEMAN | DUERSON v. PRATT |
| 06/05/18 | CHANCE McMILLAN<br>GARCIA & McMILLAN<br>440 LOUISIANA ST. SUITE 1200<br>HOUSTON, TEXAS 77002 | CHANCE McMILLAN | PAUL MILLER | HARVEY v. DMG (T) |
| 06/19/18 | PAULA A. WYATT<br>WYATT LAW FIRM<br>21 LYNN BATTS LN. SUITE 10<br>SAN ANTONIO, TEXAS 78218 | PAULA WYATT<br>JAMES PERRIN | MATT COPELAND | FLORES v. TNT |
| 07/02/18 | J. FLINT LIDDON<br>LIDDON LAW FIRM<br>1330 21ST WAY S., SUITE G-10<br>BIRMINGHAM, ALABAMA 35205 | FLINT LIDDON | ANTHONY HIGGINS | GUY v. CAMPBELL<br>TRUCKING |
| 07/10/18 | JOSEPH A. POWER<br>POWER ROGERS & SMITH<br>70 WEST MADISON ST., 55TH FLOOR<br>CHICAGO, ILLINOIS 60602 | JOE POWER | BRAD BURTON | OSBURN v. ESPINAL |
| 07/13/18 | JAY A. POTTS, II<br>STOCKHAM COOPER & POTTS<br>1111 FINANCIAL CENTER<br>505 N 20TH STREET<br>BIRMINGHAM, ALABAMA 35203 | ROBERT POTTER | JAY POTTS | DRYER v. CHAPMAN |
| 07/17/18 | TERRY D. JACKSON<br>TERRY D. JACKSON, PC<br>600 EDGEWOOD AVENUE<br>ATLANTA, GEORGIA 30312 | TERRY JACKSON | MICHEAL JOHNSON | SHAMBLIN v. CREW |
| 07/19/18 | JANEEN B. KOCH<br>KALBAUGH, PFUND & MESSERSMITH<br>901 MOOREFIELD PARK DRIVE<br>SUITE 200<br>RICHMOND, VIRGINIA 23236 | GEOFF GLICK | JANEEN KOCH | HAYWOOD v. MID<br>ATLANTIC TRANS (T) |
| 07/31/18 | CHRISTIAN MORRIS<br>NETTLES LAW FIRM<br>1389 GALLERIA DR., SUITE 200<br>HENDERSON, NEVADA 89014 | CHRISTIAN MORRIS | JUSTIN SMERBER | KNIGHT v. FF&E |
| 08/28/18 | THANDI WADE<br>TATUM & WADE<br>124 E AMITE STREET<br>JACKSON, MISSISSIPPI 39201 | THANDI WADE | STOCKARD HICKEY | McELROY v. PI&I |
| 09/07/18 | BRYAN SHOEPPEY<br>VILLARREAL & BEGUM<br>5826 FRONTAGE ROAD<br>SUITE 101<br>SAN ANTONIO, TEXAS 78201 | BRIAN SHOEPPEY | WESTON HALL | STACY v. AR<br>UTILITIES |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|---|---|---|---|---|
| 09/28/18 | BRUCE BERLINE<br>BERLINE & ASSOCIATES<br>MACARANAS BLDG, 2ND FLOOR<br>GARAPAN, SAIPAN 96950 | BRUCE BERLINE | TOM CLIFFORD | MATSUMOTO v. RNV<br>CONSTRUCTION |
| 10/02/18 | JOHN E. WARREN<br>WARREN & ASSOC.<br>105 19TH ST. E<br>JASPER, ALABAMA 35502 | JOHNNNY WARREN | CHRIS COCHRAN | McGOUGH v. ELLZEY |
| 10/12/18 | LARRY WILSON<br>THE LANIER LAW FIRM<br>6810 FM 1960 WEST<br>HOUSTON, TEXAS 77069 | LARRY WILSON | SCOTT TUCKER | REILLY v. SHERIDAN |
| 11/06/18 | MICHAEL GALLAHER<br>161 N CLARK ST., SUITE 3250<br>CHICAGO, ILLINOIS 60601 | MIKE GALLAHER | JAMES WALTON | MRAZ v. DM TRANS |
| 11/21/18 | RICHARD HUNNICUTT<br>THOMAS J. HENRY LAW OFFICE<br>4715 FREDERICKSBURG RD.<br>SUITE 507<br>SAN ANTONIO, TEXAS 78229 | RICHARD HUNNICUTT | GABRIEL GONZALEZ | MUNOZ v. G&P |
| 11/30/18 | JULIE J. BUSCH<br>JOHNSON & BELL<br>33 W MONROE ST.<br>SUITE 2700<br>CHICAGO, ILLINOIS 60603 | MITCHELL FRIEDMAN | JULIE BUSCH | WILLIAMS v. OLD<br>DOMINION |
| 01/10/19 | JOSHUA M. VICK<br>GOLDASICH & ASSOC<br>2100 3RD AVE N., SUITE 700<br>BIRMINGHAM, ALABAMA 35204 | JOSH VICK | LEA RICHMOND | ROBINSON v. USA<br>TRUCK |
| 01/18/19 | PETER COLLINS<br>HINKLE LAW FIRM<br>6800 COLLEGE BLVD<br>SUITE 600<br>OVERLAND PARK, KANSAS 66211 | KIP ROBERTSON | PETER COLLINS | HYDE v. BENNETT<br>ROGERS |
| 02/07/19 | JENNIFER JOHNSON<br>HINKLE LAW FIRM<br>6800 COLLEGE BLVD<br>SUITE 600<br>OVERLAND PARK, KANSAS 66211 | JOSEPH ELLIOT | JENNIFER JOHNSON | LUZYNSKI v.<br>MIDWEST |
| 02/12/19 | SCOTT BARNES<br>WARD & BARNES<br>222 W. CERVANTES STREET<br>PENSACOLA, FLORIDA 32501 | SCOTT BARNES | ROBERT CRABTREE | BEARDEN v. ROCK<br>N ROLL TRANSIT |
| 02/27/19 | JOAN LOCKWOOD<br>GRAY RITTER & GRAHAM, PC<br>701 MARKET ST., SUITE 800<br>ST. LOUIS, MISSOURI 63101 | JOAN LOCKWOOD | DAVID ADAIR<br>BRIAN MALKMUS | BRIGGS v. PRIME |
| 03/06/19 | ALEXANDER BEGUM<br>BEGUM LAW GROUP<br>2401 WILDFLOWER DR.<br>SUITE B<br>BROWNSVILLE, TEXAS 78526 | TREY SMITH | ANASTASIA TRIANTAFILLIS | GONZALEZ v.<br>INTERCERAMIC |
| 03/20/19 | RYAN JOHNSON<br>JOHNSON HOBBS SQUIRES<br>400 AUSTIN AVE, SUITE 903<br>WACO, TEXAS 76701 | RYAN JOHNSON | COBY SMITH | WIEBE v. EB TOURS |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|-------------------|-----------|
| 03/26/19 | NATHAN DICKSON<br>JINKS CROW & DICKSON<br>219 PRAIRIE STREET NORTH<br>UNION SPRINGS, ALABAMA 36089 | NATHAN DICKSON | PAUL MILLER | HARPER v. JOHNSON |
| 04/05/19 | ROGER LUCAS<br>MARSH RICKARD & BRYAN<br>800 SHADES CREEK PARKWAY<br>SUITE 600-D<br>BIRMINGHAM, ALABAMA 35209 | ROGER LUCAS | JOHN DODSON | CLAUSSEN v. POWER SECURE |
| 04/09/19 | DAVID GORDON<br>FRIEDMAN DAZZIO<br>3800 CORPORATE WOODS DRIVE<br>BIRMINGHAM, ALABAMA 35242 | CHRIS ODOM<br>MIKE PIERCE | DAVID GORDON | ASHBY v. NAFCO |
| 04/11/19 | MATTHEW KYLE<br>KYLE LAW FIRM<br>707 N. WALNUT STREET<br>NEW BRAUNFELS, TEXAS 78130 | MATTHEW KYLE | SHAWNA DALRYMPLE | BARKER v. FRANZEN |
| 04/30/19 | PETER ENSIGN<br>ENSIGN TITLE & ESCROW<br>6111 SHALLOWFORD ROAD<br>SUITE 105C<br>CHATTANOOGA, TENNESSEE 37421 | PETER ENSIGN | TIM DONAHUE | MICHAELS v. GLASS |
| 05/10/19 | EDWARD HAVAS<br>DEWSNUP KING OLSEN<br>36 S. STATE ST., SUITE 2400<br>SALT LAKE CITY, UTAH 84111 | ED HAVAS<br>GEORGE WADDOUPS | RUTH SHIPIRO | LEW v. AFS |
| 05/17/19 | MATTHEW ARMIJO<br>GROSSMAN LAW OFFICES<br>5440 HARVEST HILL ROAD<br>DALLAS, TEXAS 75230 | MATT ARMIJO | RODNEY CAPPEL | FLORES v. HI-CRUSH |
| 06/07/19 | PAULA WYATT<br>WYATT LAW FIRM<br>21 LYNN BATTS LANE<br>SUITE 10<br>SAN ANTONIO, TEXAS 78218 | JAMES PERRIN | ROY MCKAY | WALLACE v. STEVE BUCHANNAN |
| 06/11/19 | KEITH C. PURDUE<br>GROSSMAN LAW OFFICE, PC<br>5440 HARVEST HILL RD.<br>SUITE 200<br>DALLAS, TEXAS 75230 | KEITH PURDUE | JEFF SMITH | MOORE v. JOE TEX |
| 0/16/19 | PAUL D. BARBER<br>BARBER & BORG<br>3816 CARLISLE BLVD<br>SUITE C<br>ALBUQUERQUE, NM 87107 | PAUL BARBER | DARCI CARROL | WATSON v. FLETCHER |
| 06/21/19 | LOUIE J. COOK<br>SICO, HOELSCHER & HARRIS<br>802 N. CARANCAHUA STREET<br>SUITE 900<br>CORPUS CHRISTI, TEXAS 78401 | LOUIE COOK | JIM HOLTZ | CARSON v. WALGREEN |
| 06/28/19 | RICHARD HUNNICUTT<br>THOMAS J. HENRY<br>4715 FREDRICKSBURG RD<br>SUITE 507<br>SAN ANTONIO, TEXAS 78229 | RICHARD HUNNICUTT | CHARLIE CILFONE<br>KELLY HARTMAN | ADAMS v. CONOCO PHILLIPS |

| DATE | FIRM NAME & ADDRESS | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | CASE NAME |
|------|---------------------|--------------------|--------------------|-----------|
| 07/09/19 | PAUL D. BARBER<br>BARBER & BORG<br>3816 CARLISLE BLVD<br>SUITE C<br>ALBUQUERQUE, NM 87107 | PAUL BARBER | DARCI CARROL | WATSON v.<br>FLETCHER (T) |
| 07/17/19 | DARL CHAMPION<br>CHAMPION FIRM<br>2675 PACES FERRY RD<br>SUITE 260<br>ATLANTA. GEORGIA 30339 | DARL CHAMPION | SHAUN HANNAY | MARSHALL v.<br>KYRKIRIS |
| 07/19/19 | TIMOTHY S. SCHAFER<br>SCHAFER & SCHAFER<br>3820 E. U.S. 30<br>MERRILLEVILLE. INDIANA 46410 | TIM SCHAFER | MATT KOCH | LEEPER v. A.J. LINES |
| 07/23/19 | RODNEY MILLER<br>METHVIN TERRELL YANCEY<br>2201 ARLINGTON AVE<br>BIRMINGHAM. ALABAMA 35205 | RODNEY MILLER<br>BOB METHVIN | CHRIS ZULANIS | HUNTER v. DECATUR<br>COCA-COLA |
| 07/26/19 | ROSS W. EVANS<br>WIGINGTON RUMLEY DUNN<br>601 HOWARD STREET<br>SAN ANTONIO, TEXAS 78212 | ROSS EVANS | JOSH NICHOLS | ESCAMILLA v.<br>KILLAM OIL |