IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
*Civil Action No.: 18-CV-225-NDF*

RODNEY MIEARS and MARIAN MIEARS, husband and wife,

Plaintiff,

vs

SYSCO MONTANA, INC,

Defendant.

**A Report by Lew Grill**
**November 7, 2019**

Lew Grill
3311 Ben Hogan Lane
Billings, Montana  59106
(406) 248−2766

<span style="color:red">**EXHIBIT I**</span>

## I. INTRODUCTION

I, Lewis J. Grill, have been contacted by the law offices Schwartz, Bon, Walker & Studer LLC to review information and offer opinions regarding the case matter of Miears vs Sysco as a result of an accident that happened at approximately 02:10 PM on June 15, 2015 in the eastbound lane of US Hwy 14 at approximately MP 33, near the entrance for the Yellowstone Valley Inn in Park County, Wyoming.

At approximately that time and location, Mr. James Friede was planning to turn left into the Yellowstone Valley Inn to make a delivery while Mr. Rodney Miears was traveling east on US 14. As Mr. Friede was executing his left turn, Mr. Miears collided with the right front of Mr. Friede's CMV.

### A. Background[1]

1. Vehicle Status.

    (a) V1 – Black 2013 Dodge Charger operated by Highway Patrolman Rodney Miears.

    (b) V2 – White 2003 International operated by James Friede.

2. Operating Environment according to the police report.

    in the eastbound lane of US Hwy 14 at approximately MP 33, near the entrance for the Yellowstone Valley Inn in Park County, Wyoming. The accident occurred at approximately 2:10 pm. The two-way non-divided highway asphalt surface of the road was dry, straight and level. Speed limit was 65 mph. It was daylight with clear skies. The report listed no adverse weather conditions.

---

[1] This information is derived from the Wyoming Investigator's Traffic Crash Report, Case No. P2015083539.

3.  <u>Police Diagram</u>



4.  <u>Police Synopsis</u>

*"V1 was heading east on US 14, 16, 20 at 65 mph.  V2 was heading west on US 14, 16, 20.  At mile post 33 is Yellowstone Valley Inn (YVI) and V2 was going there to make a delivery.  At the eastern entrance V2 slowed and stopped before making a left turn.  Driver 2 stated he saw V1 and thought the vehicle was far enough away and not traveling that fast.  Driver 2 figured he had plenty of time.  Driver 2 stated he looked over at YVI to see where he could go and then started to make his left turn.  Driver #1 noticed V2 start the left turn and decided to brake and steer to his right.  V1 struck the right front of V2 with the left front.  V1 continued off the roadway and came to rest in a ditch on its wheels facing a westerly direction.  V2 during the collision was pushed back a short distance and came to rest on the roadway facing a southern direction."*

**B. Scope**

The purpose of this report is to present opinions regarding the operating performance of Mr. James Friede and the motor carrier management practices of Sysco as it relates to this crash.

For the purpose of this report:

a. ACCIDENT AREA, refers to the eastbound lane of US Hwy 14 at approximately MP 33, at the driveway for the Yellowstone Valley Inn in Park County, Wyoming;

b. CDL refers to a commercial driver license;

c. CDL Manual refers to the Model Commercial Drivers' License Manual and includes the CDL manuals from all states, including Wyoming;

d. CMV, unless specified otherwise, refers to a commercial motor vehicle and specifically includes the types of combination commercial vehicle operated by James Friede and Sysco Montana at the time of this accident;

e. CMV OPERATOR refers to the driver of a commercial motor vehicle, and includes Mr. Friede at the time of this collision;

f. DRIVER, unless specifically described otherwise, refers to a CMV operator;

g. FMCSA refers to the U.S. Department of Transportation's Federal Motor Carrier Safety Administration;

h. FMCSR means Federal Motor Carrier Safety Regulations[2];

i. SYSCO, refers to Sysco Montana, Inc. (US DOT number 053565), the defendant motor carrier in this case;

j. TRACTOR-TRAILER, and TRUCK, pertain to a truck-tractor and semi-trailer combination, and specifically includes the type of truck operated by Mr. Friede.

---

[2] The FMCSR's appear in Title 49 C.F.R., Chapter III, Subpart B.

## C. Opinions based on experience, training, education and background

Since 1968, I have worked in the trucking industry as a truck driver, owner operator, truck driver-training instructor, truck driver training program director, and as a consultant for motor carriers and truck driving schools. I am currently licensed and certified as a commercial driver for tractor-trailers with endorsements for hazardous materials, tank truck, double & triple trailers, passenger carriage, and school bus. I am certified for air brake inspection and repair and certified for operation of Longer Combination Vehicles (LCVs). I am also certified as a Pilot/Escort Driver for Oversize and Supersize Loads of extreme weight & dimension, and I have a Transportation Worker Identification Credential issued by the U.S. Department of Homeland Security.

I have an International commercial driver's license and have taken required professional competency courses for operating CMVs in Europe under the European Union requirements of the Road Transport Agreement by the European Parliament and Council.

I have logged approximately two million miles driving tractor-trailers in all 48 states, eight (8) Canadian Provinces, Alaska north of the Arctic Circle, Puerto Rico, Mexico, and Central America. I am currently an independent trucker with USDOT registration and operating authority. I drive tractor-trailers in interstate operations for thousands of miles each year in the normal course of my work, with attention on special operations, including video recording of thousands of miles of various terrain, visibility, weather, and lighting conditions from the truck driver's point-of-view, comprising a special 4-year project to capture the essence of trucking for arts and sciences. My driving experience includes operating tractor-trailers according to reenactment protocol for accredited institutions, and under the direction of forensic engineers, for the purpose of accident reconstruction, visibility studies, transportation research projects, pedagogical research, SAE Papers, videography for film and television, and accident investigation intended for court testimony.

I have assisted in the production of more than a dozen instructional videos and multimedia training modules for truck drivers, including safe operating practices. My background in photography, cinematography, and audio/video recording extends over 50 years, and includes numerous works on trucking and commercial motor transportation safety practices that have appeared in national advertising, books, and magazines, and national television. I have written more than 15 books and hundreds of articles on trucking, truck driving, safety operating practices and heavy equipment operation.

I have been invited for speaker appearances as a truck driver-training expert for the nation's leading trucking industry associations and organizations. My name has frequently appeared in trucking trade publications and various media in the context of being a knowledgeable, expert and authoritative source on matters relating to truck driving, truck driver training and safety practices. In 2007 I was featured in a trucking segment on the Discovery Channel.

During the course of my experience, I have accumulated over 50 years' experience as a truck driving instructor, truck driving program director, and truck driving curricula designer. I founded The SAGE Corporation, which under my watch operated truck driver training programs in more than thirty locations nationwide. I developed and designed truck driver training curricula, provided consulting services for fleets, industry, and government, managed a fleet of tractor-trailers and 180 truck driving instructors, served in multiple capacities including as a liaison to the U.S. DOT.

Prior to Congress mandating a CDL for various classes of CMVs, I was involved in consulting on USDOT (then FHWA) research initiatives that developed background materials that contributed to the Congressional requirement for FMCSA's predecessor organization (FHWA) to undertake the rulemaking process to create the CDL program.

I supervised special research projects regarding the value of training programs under U.S. DOT contracts and government grants, including FMCSA's research demonstration project, "Fostering a Safety Culture in Motor Carriers." That project focused on evaluating the effectiveness of training new entrant motor carrier management on fostering development of a safety culture to adopt safe operating practices, and its impact on their subsequent safety performance.

I founded the Atlantic Pacific Resource Group where I developed and produced motor carrier management and truck driver training material, truck accident analysis and trucking litigation consulting, special truck driving assignments, transportation study & research projects. I conducted research development and provided recommendations for a Report to Congress for making rule changes for the Hazardous Materials Safety Permit (HMSP) program for motor carriers in response to a Congressional mandate.[3]

---

[3] In March 2014, the Secretary of the U. S. Department of Transportation provided a report on this HMSP study to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives.

More recently I was involved in consulting on a USDOT/FMCSA research initiative for background materials relevant to the Congressional requirement for FMCSA to establish mandatory, minimum training requirements for entry-level CMV drivers prior to their CDL testing. These are in support of the MAP-21/ P.L. 112-141 requirement signed into law by the President in July 2012 for FMCSA to issue regulations establishing minimum training standards for CDL entry level driver training.

I also assisted as a team member on projects to provide research support to FMCSA's rulemaking and program evaluation activities to explore, clarify or resolve issues related to various Commercial Motor Vehicle (CMV) driver, carrier, and vehicle safety concerns. That included assisting in development of FMCSAs required testing protocol and procedures to meet the federal rule for testing of Electronic Logging Devices (ELDs), by providing:

- Subject matter expertise on the user experience of working with ELD's;

- The information gathered for FMCSA; and,

- Provide my trucks for use as a real-time-test.

I am currently engaged in research and analysis on the impact of foreign driving cultures on safety operating practices, and thus CMV crashes, in the United States, including CMV drivers exclusively practiced in European driving cultures that are inconsistent with United States driving norms, customs, practices, and laws.[2]

I have comprehensive experience in mining and construction industries relative to equipment operation and workplace procedures. My education, training and experience include managing motor fleet safety programs, accident investigation, and traffic accident reconstruction.

I have training and experience in truck accident investigation, vehicle dynamics, and accident reconstruction, including advanced accident reconstruction – utilizing human factors research, heavy truck vehicle accident reconstruction, and pedestrian motor vehicle accident reconstruction. I have testified in litigation matters in Federal and State courts where I have qualified as an expert concerning safe operation of commercial motor vehicles and the standard of care of commercial vehicle operators and motor carriers in the courts of AL, AK, AZ, CA, CO, CT, DE, FL, GA, HI,

---

[2] The analysis includes the impact of the 2006 Road Transport Agreement by the European Parliament and Council on drivers migrating to CMV jobs in the USA.

ID, IL, IN, KS, KY, LA, MA, ME, MD, MI, MN, MO, MT, NC, NE, NJ, NM, NV, NY, OH, OK, OR, PA, SC, SD, TN, TX, UT, VA, VT, WA, WI, WV, WY, a number of Canadian Provinces, and Guam.

My CV is attached to this report as APPENDIX A.

My opinions set forth in this report are supported by my prior education, training, experience, and the summary of material and information I reviewed, which is listed in APPENDIX B of this report.

## II. TRUCKING INDUSTRY RULES, REGULATIONS, STANDARDS, CUSTOMS, AND PRACTICES.

### A. Standard customs and practices in the trucking industry.

The totality of trucking industry customs and practices is based upon the combined experiences of "stake holders" who are industry experts in their particular occupation, that share a common interest for highway safety. Included are truck drivers, owner-operators, motor carriers, risk managers, trade organizations, government, insurance companies, manufacturers, industry suppliers, and training providers and their instructors, to mention a few. All play an important role in the development of operating standards, training materials and their delivery to sensitize and educate CMV operators. This educational material includes, but is not limited to, publications and material produced by motor carrier industry sources, for example, the:

- American Trucking Associations (ATA);
- National Safety Council (NSC);
- The Smith System for Safe Driving;
- State Trucking Associations;
- Truckload Carrier Association (TCA); and,
- USDOT (to mention a few).

### B. Federal Motor Carrier Safety Regulations (FMCSR).

The FMCSR's are applicable to all employers, employees, and commercial motor vehicles, which transport property or passengers in interstate commerce. Motor carriers, including officers, agents, representatives, employees, and drivers, or those who are responsible for hiring, assigning, training, supervising, maintaining, dispatching, or driving trucks, have a statutory duty to be instructed in, and comply with Federal Motor Carrier Safety Regulations.[4] Moreover, the federal regulations require that all drivers of commercial motor vehicles shall have knowledge and skills necessary to operate a commercial motor vehicle safely.[5]

## III. SPECIFIC ANALYSIS AND OPINIONS.

### A. Mr. Friede was properly licensed, qualified, and trained.

1. From my review of Mr. Friede's driver qualification file, I opine the following:
   a. Mr. Friede had no disqualifying offenses, disqualifying traffic convictions (or any in the previous three years), or any accidents.
   b. Mr. Friede did not exhibit any operating characteristics that would constitute an imminent hazard, as defined in FMCSR §383.5.
   c. Mr. Friede possessed a commercial driver's license that permitted him to operate the commercial motor vehicle that was assigned to him by Sysco.
   d. Mr. Friede had a certified medical examiner's certificate.
   e. Mr. Friede had no positive drug/alcohol test records.
   f. Mr. Friede was issued a road test, albeit not required, in which he produced satisfactory results on a multitude of operational categories.

### B. Sysco's hiring, qualifying, training, and supervision methods exceed minimum requirements and standards.

1. Sysco's hiring process as it relates to driver qualification files was reasonable and in line with industry expectations as well as regulatory requirements as outlined in FMCSR §391.
2. Sysco issued additional training not required of them, including:
   a. 12-week instructional program to include classroom training, route training, and monitored supervision;

---

[4] FMCSR § 392.1.

   b. Training with a commercial driver training school;

   c. Defensive driver training with a well-known defensive driver program, The Smith system.

3. Sysco conducted inspections of Mr. Friede's work in the form of observation and coaching.

   a. It is important to note that although the 60- and 90-day coaching appear to have been missed, this is not a causative factor of this crash. Further, there is nothing in Mr. Friede's 30-day evaluation that would predict he would be involved in a crash, nor is there anything that suggests he would need remedial training or additional coaching beyond this 30-day point.

**C. There is no evidence to suggest that Sysco coerced or encouraged aggressive or unsafe driving.**

1. FMCSR §390.6 – Coercion Prohibited.

   a. "*(a) Prohibition. (1) A motor carrier, shipper, receiver, or transportation intermediary, including their respective agents, officers, or representatives, may not coerce a driver of a commercial motor vehicle to operate such vehicle in violation of 49 CFR parts 171-173, 177-180, 380-383 or 390-399, or §§385.415 or 385.421.*"

      (1) **OPINION:** Although this regulation did not take place until approximately five months after this accident, it is nonetheless important to recognize that there is no evidence of Sysco performing this type of behavior or in any way trying to encourage their drivers to violate federal regulations or state and local laws.

2. FMCSR §390.13   Aiding or abetting violations.

   a. "*No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter.*"

      (1) **OPINION:** As with coercion, there is no evidence that Sysco aids, abets, encourages, or requires Mr. Friede to violate any of the rules of the FMCSR.

3. Deposition Transcript of Bradley Frank.

   a. Page 108: "*Q. How would the drivering associate – Excuse me – delivery associate be trained as to the sense of urgency? Who's giving them that information? A. The trainers that are with those guys will show the drivers how to work efficiently in the back of the trailer.*"

      (1) **OPINION:** It is clear to me, and to anyone who has actually worked in this industry, that the sense of urgency that Sysco is referring to has to do with how

---

[5] FMCSR § 383.3. See also §§ 383.110, 383.111, and Appendix to Subpart G – sample guidelines for required knowledge and skills.

       Mr. Friede manages his time while on a jobsite, and does not suggest that Mr. Friede should be urgent in the way he drives his CMV.

**D. This accident was not predictable or foreseeable on the part of Sysco, nor has Sysco shown any signs of failing to foster a safety culture or safety management systems that could have prevented this accident.**

1. From my review of the training and evaluation records of Mr. Friede, there is nothing that would indicate he is likely to be involved in an accident.
2. Sysco's added training and supervision as it relates to defensive driving would typically mitigate this type of accident, and does not create an environment for accident behavior to manifest among drivers.
3. Mr. Friede received satisfactory remarks throughout his training and showed no signs of being predisposed to being involved in accidents.
4. As it relates to safety culture and safety management systems:
    a. Sysco's additional training, coaching, monitoring, and supervision steps clearly indicate a safety culture that promotes safe drivers and safe driving attitudes and beliefs.
    b. Sysco's satisfactory rating, albeit from 2007, shows that they have exhibited to the FMCSA that they have the necessary safety management systems in place. Further, there is no evidence that Sysco has failed to uphold these safety management systems since their audit took place.

**E. From my review of Mr. Whitney Morgan's deposition, I agree with him in at least, but not limited to, the following areas:**

1. There is no evidence to suggest that Mr. Friede was in violation of his hours of duty for that day.[6]
2. There is no evidence that Mr. Friede was a disqualified driver.[7]
3. There is not evidence that Mr. Friede was under the influence of anything.[8]
4. There is nothing in the FMCSR's that precludes a motor carrier from hiring a driver with no experience.[9]
5. There was no violation of the FMCSR's as it relates to the hiring of Mr. Friede.
6. There is no evidence to suggest that Sysco's "sense of urgency" as a corporate act included violating any rules, laws, regulations or that they encouraged their drivers to do so.[10] And

---

[6] Deposition Transcript of Whitney Morgan, pages 64-65.
[7] Id., page 65.
[8] Id., page105.
[9] Id., page103.
[10] Id., page 157.

    additionally, there is no evidence to suggest that Sysco had any other habit or policy encouraging its drivers to violate the FMCSRs.[11]

7. There is no evidence to suggest that Mr. Friede violated any rules of the road prior to the accident.[12]

## III. <u>CONCLUSION</u>

1. Mr. Friede was properly licensed, qualified, and trained by Sysco.

2. Mr. Friede was in compliance with hours of service regulations, and ultimately his scheduling and timing of his route had no bearing on this accident.

3. There is no evidence to suggest that Sysco urged Mr. Friede to drive aggressively or unsafely.

4. There is no evidence to suggest that Sysco could've predicted this accident would occur.

5. Sysco's training, hiring, and qualification processes exceed the minimum industry standard and regulatory requirements as it relates to this accident.

6. There is no evidence to suggest that Sysco's safety culture is lacking in such a manner as to knowingly result in this type of accident.

---

[11] Id., page 165.
[12] Id., page 166.

**These are the opinions that I have as of this date. I reserve the right to supplement or modify my opinions if additional information is made available to me.**

I, LEW GRILL, CERTIFY THAT THESE ARE MY OPINIONS ON THIS 7th DAY OF NOVEMBER, 2019 REGARDING THE CASE OF MIEARS VS SYSCO

_____
LEW GRILL

## REVIEW OF MATERIALS AND INFORMATION BY LEW GRILL

*Regarding Miears v Sysco Mt. Inc*

1. Deposition Transcript of Bradley Wayne Frank with exhibits
2. Deposition Transcript of James Charleton Kelly with exhitits
3. Deposition Transcript of James Masterson Friede
4. Deposition Transcript of Rodney Miears
5. 1 Complaint and Jury demand
6. 3 Answer Affirmative Defenses Jury Demand
7. R.Miears' Resps to 1st RFPDs4.25.19(w-out Docs.)
8. R.Miears' Resps to 1st ROGs4.25.19(w-out Docs)
9. R.Miears'Resps to 2nd ROGs 7.22.19
10. Resps to Pltf's RFAs 6.18.19
11. Resps to Pltf's RFAs 1st Suppl6.18.19
12. Resps to Pltf's RFPDs-2nd suppl8.30.19
13. Resps to Pltf'sRFPDs6.5.19
14. Resps to Pltf's ROGs6.18.19
15. Lytx_ER9180A3_0209PM_Both.
16. Lytx_ER9180A3_20150615_0209M_Inside
17. Lytx_ER9180A3_20150615_0209PM_Outside
18. 1-11_Investigaror's Traffic Crash Report
19. 436-448_Photographs
20. 29144 Rodney Miears DS350498
21. 1-5_30Day Supervisor Observation 4.3.15
22. 6-8 Employment Vehicle-Property Info Report
23. 9-46_James Friede-Montana-DQF
24. 47-50_Logs 6.13.15

25. 51_Observation3.30.15
26. 52-53_Observations2.25.15  4.2.15
27. 54-339_Photos
28. 340-341_Post Accident Results
29. 342_WHP Exchange Information
30. 34-368_Insurance Policy
31. 370_DQ File checklist
32. 371-396_DQ File
33. 397-401_Drivers Liscense & MVR Request Pre Accident
34. 402-403_Post Accident MVR Request &MVR
35. 404-408_30 Day Supervisor Observation4.3.15
36. 409-444_Company Policies
37. 445-449_Disclipinary Letters
38. 450-477_Driver Training Handbook
39. 478-490_Driver Training Schedule
40. 491_Handbook Receipts
41. 492_Observation3.30.15
42. 493-494_Observations 2.2.15 4.2.15
43. 495-497_Post Accident Smith System Driver Training
44. 498_Sage Driving School Certificate 1.6.15
45. 499-504_Smith Systems Driver Training 1.27.15
46. 505-532DOT Training Manual Materials
47. 533-539 DOT Training Manual Materials
48. 540-630 2014 Montana Commeical Drivers Liscense Manual
49. 631-790 DOT Training Manual materials
50. 791-838 DSA Orientation Training ManualMaterial
51. 839-862 Master Entry Level Driver Training Program
52. 863 Photo of Training Videos 1
53. Photo of Training Videos 2
54. 865 Photo of Training Material- Driving Manual.

3

55. 866-870 James Friede's signed acknowledgment training docs 1.28.15
56. 871 2014MCS-150 Sysco Montana
57. 872 2016 MCS-150 Sysco Montana
58. 873-913 Dispatch Records 5.24.15-6.19.15-Redacted
59. 914-939 Crash Data Report (2);
60. 940-951 Internal Communications
61. 975 DOT Register 2014
62. 976 DOT Register 2015
63. 977 DOT Register 2016
64. 978 DOT Register 2017
65. 979 DOT Register 2018
66. 980 DOT Register 2019
67. 981-982_Observations
68. 983-984_Job Description -Delivery Driver
69. 985-990_SYSCO Transportation Safety Audit_DOT-03.31.16
70. 991-1015_Smith System Driver Study Guide
71. 1016-1017_DOT Recordable Accident Registers for 2012&2013
72. 1018_Union Language on Discharge& Warning Ltrs
73. 1019-1023_Sysco Transportation Safety Audit_DOT8.23.19
74. 1024-1025_CDL A Delivery Truck Driver Trainee
75. 1026-1028_Job 18085
76.  Ltr to L.Grill 9.11.19
77. 17.1 Ex 1 - Veritech Consulting Engineering Report
78.  17.2 Ex 2 - Morgan Report
79. Deposition Transcript of Whitney Morgan with Exhibits
80. Frank Exhibits