Jeff S. Meyer, WSB No. 6-4280
Schwartz, Bon, Walker & Studer, LLC
141 S. Center St., Ste. 500
Casper WY 82601
307-235-6681 | Fax: (307) 234-5099
jmeyer@schwartzbon.com
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| RODNEY MIEARS and MARIAN MIEARS, husband and wife, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 18-CV-225F |
| vs. | ) ) ) | |
| SYSCO MONTANA, INC., | ) ) | |
| Defendant. | ) | |

---

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM

---

COMES NOW Defendant, Sysco Montana, Inc. ("Defendant" or "Sysco"), by and through its attorneys of Schwartz, Bon, Walker & Studer, LLC, and hereby submits its *Brief in Support of its Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claim* as follows:

### I.    PRELIMINARY STATEMENT

Plaintiffs seek damages they claim resulted from a motor vehicle accident that occurred on June 15, 2015, when a passenger vehicle being driven by Plaintiff Rodney Miears and a semi-tractor trailer combination being driven by James Friede ("Friede") collided when Friede was turning left off Hwy 14-16-20, into the entrance of the Yellowstone Valley Inn ("YVI"), located near Cody, WY. ECF No.1, ¶ 8; ECF No. 32-1, ¶¶ 11 and 12; Exhibit A, Drive Cam Video. Sysco admitted that Friede was its employee and was in the course and scope of his employment at the

time of the accident, and that it is vicariously liable for the negligent conduct of its employee.  ECF No. 3, ¶¶ 5 and 7.[1]   To the extent that Plaintiffs' First Amended Complaint asserts allegations of Friede's negligence, Sysco admits that Friede was solely at fault for causing the accident and does not seek to asses any fault to the Defendants.

The issue before the Court in this Motion is Plaintiffs' claim of punitive damages against Sysco from Sysco's alleged actions or inactions related to the hiring, retention, supervision and/or training of Sysco's employee Friede.  Plaintiffs' assert that Sysco is liable for punitive damages as a result of its retention of Friede outside the job description requirement that Sysco allegedly imposed; that Sysco failed to complete and/or document training assessments of Friede; that Sysco assigned Friede a new route, Friede was behind schedule on his route the day of the accident and that Sysco did not provide any assistance to Friede, relieve him of his job obligations, or provide him with specific directions; and that Sysco's actions in doing these things amounted to willful and wanton misconduct.  ECF No. 32-1, ¶¶ 34-42. Plaintiffs' further assert that Sysco established company policies and a company culture that encouraged its employees to act in reckless disregard of the safety of others.  *Id.*  ¶¶ 43-45.

There is no evidence to demonstrating Sysco's actions or inactions related to Friede's hiring, retention, supervision and/or training amount to willful and wanton misconduct and Plaintiffs cannot satisfy the mandates of Restatement (Second) Torts § 909 entitling them to punitive damages against Sysco.  Plaintiffs fail to demonstrate that Sysco acted and/or failed to act with knowledge, ill will, or intent to cause harm to Plaintiffs; and (ii) that Sysco's action and/or inaction are worthy of exacting punishment.

---

[1] Sysco will additionally admit those allegations in its Answer to Plaintiffs' First Amended Complaint.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Fed. R. Civ. P 56 when the pleadings and admissible evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005).   When there is sufficient evidence that the trier of fact could resolve an issue either way, the issue becomes genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A material fact exists if under the substantive law the fact is necessary to the resolution of the claim.   *Id.*   The record is viewed in the light most favorable to the non-moving party, and all reasonable inferences are resolved in the non-moving party's benefit. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   Conjecture and speculation are insufficient to defeat a motion for summary judgment. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006).   The party moving for summary judgment has the burden of persuasion. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002).   "A federal Court sitting in diversity must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

## III.   STATEMENT OF FACTS

Sysco is a Montana Corporation with its principal place of business in Billings, MT.   ECF No.1, ¶ 2; ECF No. 3, ¶ 2.   Sysco is a wholly owned subsidiary of Sysco Holdings, LLC.   ECF No. 5.   Sysco Holdings, LLC is wholly owned by Sysco Corporation ("Sysco Corporate" or "Corporate"), and a publicly traded corporation.   *Id.*   Sysco Corporate gives Sysco direction on several things that Sysco needs to follow.   Exhibit B, Deposition of Bradley Frank, 5:18-22.

Sysco is an authorized motor carrier under the rules of the U.S. Department of Transportation. *Id.* at 9:13-15, 11:5-7. Sysco is authorized to transport goods in interstate commerce. *Id.* Sysco operated approximately 100 semi-tractors and employed approximately 120 drivers for those semi-tractors in 2015. *Id.* at 22:2-23:8. Sysco operated its semi-tractor units under its DOT authority for approximately 5.5 to 5.7 million miles in 2015. *Id.* at 23:9-24:25.

Sysco Corporate reviews all new hire commercial motor vehicle ("CMV") delivery driver applications for employment, and if the applicants meet Corporate's approval, Sysco can proceed with interviewing the candidate for employment. *Id.* at 54:23-55:21, 58:4-6. A prospective new hire driver is interviewed by at least two Sysco supervisors. *Id.* at 56:4-13. Sysco Corporate approves the hiring of all the driver employee based on the recommendations of the Sysco interviewers. *Id.* at 58:10-13. Bradley Frank, Sysco's Director of Transportation, provides the recommendation to Corporate after the interview process. *Id.* at 55:22-56.

Driver training and levels are determined by Sysco and Corporate directives. *Id.* at 39:21-24. Sysco follows the training system(s) and plan(s) of Corporate. *Id.* at 39:25-40:3. Sysco determines what training programs will be necessary for new hire drivers based upon the driver's experience. *Id.* at 60:20-25; Exhibit C, Deposition of James Kelly at 21:13-17. If a prospective new hire driver does not have prior CMV driving experience, attendance at a certified truck driving school is necessary prior to employment. Ex. B, at 59:7-60:19.

Friede applied for the position of a "CDL A Delivery Truck Driver Trainee" with Sysco on December 31, 2014. *Id.* at 57:13-16; Exhibit D, Deposition of James Friede at 8:8-19; Exhibit E, Defendant's First Supplemental Answers to Plaintiff's First Interrogatories.[2] Sysco's standard

---

[2] In its original responses to discovery and its supplements to Defendant's Fed. R. Civ. P. 26 disclosures, Sysco mistakenly produced an inapplicable job description for Mr. Friede. This was supplemented and correct by Defendant's Fifth Supplemental Rule 26 Disclosures and its First Supplemental Answers to Plaintiffs' Interrogatories (Ex. E).

selection and interview process were followed, and Mr. Frank recommended that Friede be hired as a "CDL A Delivery Truck Driver Trainee" to Corporate. Ex. B, at 56:14-16; 62:9-11. Friede did not have experience operating a CMV in interstate commerce prior to being hired by Sysco. Ex. B, at 61:1-4; Ex. D, at 10:8-11. Friede was hired by Sysco on or about January 27, 2015 as a trainee, for the purposes of becoming a Sysco delivery driver after receiving training. Ex. B, at 61:8-17, 64:5-65:14, 77:6-9, 78:8-14; Ex. C, at 21:18-21; Ex D, at 12:2-5; Ex. E.

Sysco employed and utilized specific policies and training programs for new inexperienced drivers such as Friede and others that had been hired before. Ex. B, at 68:14-19, 76:3-10, 132:3-16, 133:9-13; Ex. C, at 22:24-23:5, 23:20-24; Ex. D, at 71:2-9; Exhibit F, 12 Week Training Program. Friede's circumstances met the qualifications of "driver trainee" per Corporate job descriptions and policies. Ex. B, at 63:11-64:4; Ex. E.

Friede did not meet the definition of a "delivery driver" as set forth in Sysco job description for experienced drivers at the time of his hiring. Ex. B, at 63:1-10, 68:8-13, 75:7-16, 76:24-77:2, 77:19-23, Depo. Ex. 6; Ex. D, at 45:20-25. Friede was not hired by Sysco as a "delivery driver" under this description. *Id.* Friede went on Sysco's corporate training program for new hire inexperienced drivers under Sysco's pre-existing hiring program for new inexperienced drivers like Friede. Ex. B, at 68:14-19; 76:3-10, 132:3-133:8; Ex. C, at 22:24-23:5, 23:20-24. Sysco hired and employed other new hire inexperienced drivers under this program prior to Friede being hired. Ex. B, at 133:9-13; Ex. C, at 22:24-23:5, 23:20-24. Friede knew one other newly hired Sysco driver that had no prior experience driving a CMV in interstate commerce. Ex. D, at 71:2-9.

Friede received Smith System Training and additional Sysco training when he was hired by Sysco. Ex. D, at 39:10-16, 39:17-20. Friede completed Sysco's twelve-week new hire

inexperienced driver training program.  Ex. B, at 65:22-66:5, 69:14-25; Ex. F.  This training program was in place before and at the time Friede was hired.  Ex. B, at 80:24-81:6.

Sysco used "coaching forms" as part of its training process that were intended to be completed at 30-, 60- and 90-day intervals after hiring new hire drivers.  *Id.* at 100:22-101:6, Depo Ex. 11.  The 60- and 90-day coaching evaluation forms were not documented for Friede.  *Id.* at 101:4-102:11.  Sysco measured and noted an employee's progress within the 30-60-90 coaching form evaluating whether the employee demonstrated a sense of "urgency" when performing his job to ensure compliance with Sysco's customer service standards.  *Id.* at 106:7-9, 107:13-19, 108:2-7, 105:9-16, Depo Ex. 11, p. 3, sec. "Productivity and Accuracy".  Sysco desired their delivery drivers make timely delivery of products for their customers. Ex. D, at 59:8-13.  Friede's 30-day coaching form noted that he demonstrated urgency by "… being in a hurry to take care of customers."  Ex. B, at 108:10-15; Depo Ex. 11.  Friede was never directly informed by  Sysco management that Sysco required that he demonstrate such a sense of urgency; however, he was aware Sysco discouraged drivers getting behind on their route.  Ex. D, at 57:23-58:21.  The document also reflected that Friede was familiar with out of town routes and used the trucks onboard STS (Sysco Transportation System) and GPS.  Ex. B, at 111:4-10, Depo Ex. 11, p. 2, sec. "Safety".

On January 12, 2015, Friede received his Commercial Driver's License Learner's Permit, and on March 19, 2005 Friede obtained his Unrestricted Class A Commercial Driver's License.  Ex. D, at 74:10-18; 74:19-75:10; Exhibit G, Copy of Friede's CDL.  Friede was qualified by Sysco to drive a semi-tractor trailer on his own without direct in-cab supervision after he completed the Smith System training program and Sysco's twelve-week new hire inexperienced driver training program in April 2015 and obtained his Class A CDL.  Ex B., at 39:10-16, 70:25-71:2, 71:17-23;

Ex. C, at 26:8-11; Ex. D, at 19:22-25, 20:14-19.   Sysco supervisors accompanied Friede on occasion to conduct observation rides after Friede had become qualified as part of its standard practice.  Ex. D, at 89:21-90:5.  Friede understood that keeping a proper lookout was one of the first rules of the road.  *Id.* at 78:6-79:18, 117:1-13.

Friede became a day route driver for Sysco after completing his training.  He started his duty hours in Billings, Montana at Sysco's distribution center, made his assigned deliveries, and returned to the distribution center the same day.  Ex. B, at 75:1-6.  Friede did not have his own designated delivery route because of Sysco drivers' union contract.  *Id.* at 72:7-73:12.  This was common within Sysco for newly hired delivery drivers.  *Id.*

Some delivery routes assigned to Friede were easier for him to complete within his hours of service than others. Ex. D, at 60:3-61:1.  The longer, tougher routes, including the route on June 15, 2015, required Friede to "hustle" and gave him a "sense of urgency" to meet Sysco's timeliness standards.  *Id.* at 60:3-61:1.  Friede did not have prior problems satisfying Sysco driver standards; was never encouraged by Sysco to speed or violate other rules of road while completing his delivers; was never over his mandated hours of service; and was never instructed to "hustle faster" even if he got behind on his route.  *Id.* at 89:4-15, 102:20-24, 102:25-103:17, 108:13-21.  Friede was frequently assigned new or unfamiliar routes which he was able to complete without incident prior to June 15, 2015.  *Id.* at 102:5-10.  Friede notified Sysco that he was "off schedule" prior to the accident. *Id.* at 109:8-11, 110:1-4.

Friede was dispatched on the Cody Wyoming Route on June 15, 2015.  Friede previously completed routes in Cody, Wyoming, but this specific schedule was different – containing more stops/deliveries.  *Id.* at 18:11-21, 106:25-107:1-14.  Friede observed this when he arrived at the Billings Depot on June 15, 2015, and before he left to begin his delivery route.  *Id.*  Friede became

disgruntled because he was uncertain that he could complete the route in one day. *Id.* at 105:7-15, 107:1-3, 107:8-14. The route included a delivery at the YVI, near the location of the accident. *Id.* at 17:23-18:2. Friede had not previously delivered to the YVI. *Id.* Sysco did not tell Friede which entrance of the YVI to use for his June 15, 2015 delivery. *Id.* at 67:1-6. Friede identified an entrance to the YVI but was concerned about getting stuck, getting behind someone, and finding where he was to go once off the highway. *Id.* at 101:17-25. He did not see the Plaintiff and turned. *Id.* at 101:17-25, 51:13-52:6; Exhibit A.

The accident surprised Friede and he admitted that it was not "okay" to turn in front of the Plaintiff. *Id.* at 51:13-52:6. Friede admitted he was not maintaining a good lookout and he was not driving in a defensive manner when the accident occurred. *Id.* at 52:7-11, 53:20-54:11. He testified that there was no additional Sysco training that could have been provided to train him to "maintain a proper lookout." *Id.* at 79:19-80:7. Friede did not intentionally cause the accident; did not intentionally cause any injury to the Plaintiff; and the accident was not a result of his not caring or any claimed blatant disregard for the Plaintiff. *Id.* at 80:13-81:2. Friede not over his mandated hours of service at the time of the accident. *Id.* at 102:25-103:17.

Whitney Morgan ("Morgan") was designated as an expert and consultant on state and federal motor carrier regulations compliance and safety by Plaintiffs. *See* ECF No. 17. Morgan understands and explained that his expertise is in the field of commercial motor vehicle compliance, enforcement and safety of operation, including compliance with "Title 49 of the Code of Federal Regulations, Federal Motor Carrier Safety Regulations, [and] commercial driver's license standards." Exhibit H, Deposition of Whitney Morgan at 10:11-19, 56:7-10. It may also include issues related to cargo loading, unloading, and securement. *Id.* at 10:20-22. More specifically, Morgan focuses on carrier compliance with  Title 49 of the Code of Federal

Regulations, relating to drug and alcohol testing procedures, driver qualifications, driving of commercial motor vehicles in compliance with the regulations and standards, commercial driver's license standards and to make sure the carrier company is complying with the applicable regulations. *Id.* at 18:2-19. Morgan believes his expert opinions are grounded in an analysis of compliance with the Federal Motor Carrier Safety Regulations ("FMCSRs") and commercial driver's license requirements. *Id.* at 52:8-23.

> Morgan's expert report provided his ultimate opinion in this case as follows:

> [T]hat Sysco failed to have all the necessary safety management controls in place and functioning to meet the safety fitness standards, to comply with all of the applicable safety regulations and to thereby reduce the risks associated with commercial motor vehicle accidents, pertaining to the operations of Mr. Friede…that Sysco and Mr. Friede's actions and/or inactions, as set forth above in this report, demonstrated a conscious disregard for the safety of operations, as well as those for other motorists, including Mr. Miears. Compliance with applicable safety standards, which are established for safe operation and protection of the public, are a clear duty of all CMV operator/drivers and motor carriers. Additionally, it is my opinion that Sysco, and its driver, Mr. Friede caused and or contributed to the cause of the accident …

ECF No. 17-2, p. 17, Conclusions ¶ 1; Ex. H, at 59:17-61:11.

> "Compliance with applicable safety standards" refers to complying with the FMCSRs and the CDL standards. Ex. H, at 61:16-20. This ultimate opinion of Morgan is based on information and opinions contained within his report. *Id.* at 60:12-15.

> Morgan offered testimony that his report and testimony included opinions about Sysco's compliance with the following FMCSRs:   49 C.F.R. § 390, Applicability; § 382.301, Pre-employment testing; 382.303 Post-accident testing; § 380.503, Entry Level Driver training requirements; § 391.11 General qualifications for drivers; § 383.3, Applicability of FMCS Rules; § 392.2, Applicable operating rules; § 395.8 – Hours of service – log books; and § 395.3 – carriers responsibilities for log book compliance. *Id.* at 91:16-93:1; ECF Doc. No. 17.2, pp. 6-8, 10-11 and 15-16. Morgan testified that Friede was a qualified commercial motor vehicle driver under

the FMCSRs and Commercial Driver's License ("CDL") standards on the day of the accident. Ex. H, at 65:13-14; 66:21-24. He reviewed Sysco's 12-week Inexperienced Driver Training materials. *Id.* at 67:17-68:4.   Morgan expressed no opinions about 12-week training program, nor did he provide any criticisms of the training Friede received from Sysco, or an opinion that the training contributed to the accident.   *Id.* at 115:5-13.

FMCSR 49 C.F.R. § 390 is a general applicability regulation specifying who the regulations apply and Morgan acknowledged the FMCSRs do not prohibit carriers from hiring new inexperienced drivers to operate commercial motor vehicles.  *Id.* at 91:1-7,  102:14-18, 102:22-103:7.  Rather, the regulations require any new inexperienced driver be capable of safely operating a commercial motor vehicle by either experience or training. *Id.* at 102:18-21.

Morgan's expert report alluded to his opinions that Sysco failed to require/produce a pre-employment drug screen for Friede, and if this was not completed, would demonstrate a violation of 49 C.F.R. § 382.301, and "demonstrates Sysco's lack of knowledge and safety management controls to ensure compliance with the FMCSRs, as well as their failure to meet the MCS-150 and OP-1 safety certification requirements." ECF No. 17-2, p. 7; Ex. H, at 103:20-104:13.  Morgan's report alluded to an opinion that if Sysco failed to require Friede to submit to a 49 C.F.R. § 382.303 post accident drug and alcohol test, it would "demonstrate Sysco's lack of knowledge and safety management controls to ensure compliance with the FMCSRs, as well as their failure to meet the MCS-150 and OP-1 safety certification requirements."  ECF No. 17-2, p. 8; Ex. H, at 107:16-108:4.  In support of these opinions, Morgan cited to Sysco's failure to require/produce a pre-employment drug screen and failure to produce a post-accident drug or alcohol test. ECF No. 17-2, p. 7 and 8;  *Id.* at 103:20-104:13, 107:16-108:4.  To the contrary, Sysco obtained a pre-

employment drug screen and post-accident drug and alcohol screen for Mr. Friede, and that these documents were supplied to counsel for Plaintiffs.[3]

Morgan agreed that Sysco demonstrated knowledge of safety management controls ensuring compliance with the FMCSRs, its safety certification requirements under MCS-150 and OP-1, and adherence to 49 C.F.R. § 382.301 and § 382.303 because it obtained Friede's pre-employment drug screen and a post-accident drug and/or alcohol test. Ex. H, at 104:20-105:11, 108:9-23. Plaintiffs' expert acknowledged that Sysco demonstrated proper compliance, knowledge and safety management controls. *Id.*

Morgan cited to 49 C.F.R § 391.11 but acknowledge this regulation was not applicable to Friede and Sysco because it only related to the date of hire for Friede – not the date of the accident. *Id.* at 111:12-25, 112:17-22. He then references 49 C.F.R. § 382.3, but this similarly is unrelated to the facts and was not applicable to Morgan's ultimate opinion regarding Sysco. *Id.* at 116:4-9. Finally, 49 C.F.R. § 392.2 requires drivers of commercial motor vehicles, like Friede, to comply with the regulations and laws of the relevant jurisdiction. Morgan expressed no opinion that Sysco violated this regulation. *Id.* at 116:17-22, 117:20-22.

FMCSRs require that commercial operators are to perform their job within his FMSCR hours of service. *Id.* at 118:25-119:8, 119:22-120:5. It is reasonable for an employer, like Sysco, to expect this from its employees. *Id.* at 118:25-119:8, 119:22-120:5. There was no evidence or opinion Friede was in excess of his hours of service limitations under the FMCSRs on June 15, 2015. *Id.* 120:16-22. There is no evidence that the route Friede was employed to fulfill on June 15, 2015 would require him to operate in excess of the FMCSRs hours of service requirements, or

---

[3] Sysco produced copies of Friede's § 382.301 pre-employment drug screen, § 382.303 post-accident drug and alcohol tests to Plaintiff's counsel on March 6, 2019 with its initial Rule 26 disclosures. It is unknown why this information was not sent to Mr. Morgan.

that Friede or Sysco required or otherwise encouraged Friede to violate his hours of duty.  *Id.* at 121:8-23.

Morgan explained that Sysco did not commit any FMCSR violations.  *Id.* at 127:8-25. Morgan's ultimate opinion was not based on allegations that Sysco violated any FMCSR or other law or rule, but instead was based on Friede's status as an entry level driver; having a "new' route with more stops than the prior route; Sysco's non adherence to its "policy" for new hire drivers; failure to complete the 60- and 90-day evaluations for Friede; Friede feeling as though he had been given more than he could handle on June 15, 2015; and Friede having issues that had arisen on June 15, 2015 causing him to be distracted. *Id.* at 127:8-25.

Morgan based this opinion on his interpretation that Sysco's "violated" of its new driver job description based on the testimony of Brad Frank, and Exhibit 6 to Mr. Frank's Deposition. *Id.* at 128:9-16.; Ex. B, at Depo Ex. 6.  Morgan did not and could not explain how he determined the job description was a hiring policy that preventing Sysco from hiring new, inexperienced drivers like Friede.  Ex. H, at 128:17-130:25.  Morgan did not and could not explain how such a claimed violation of "policy" caused the accident.  *Id.*  Morgan acknowledged that Sysco had a training program in place for inexperienced drivers at the time Friede was hired, and Sysco had previously hired new, inexperienced drivers like Friede.  *Id.* at 131:1-133:1.  Morgan agreed that the FMCSRs do not prohibit carriers from hiring new inexperienced drivers to operate commercial motor vehicles; and that Sysco did not violate any regulation by hiring Friede or employing him to drive on June 15, 2015. *Id.* at 102:14-18, 102:22-103:7, 133:11-134:18.

The 30-60-90-day evaluation that Sysco used was not a requirement of the FMSCRs.  *Id.* at 135:5-9.  Morgan offered did not offer an opinion that the failure to complete these evaluations caused or lead to the June 15, 2015 accident.  *Id.* at 135:18-136:2.

There is no evidence Sysco encouraged, promoted, or mandated that Friede violate traffic laws, the rules of the road, other regulations, or to create hazards to others under a sense of urgency to get the job done. *Id.* at 143:13-25, 157:13-20, 164:13-18, 164:22-165:11.  A "sense of urgency" to get the job completed was not an excuse for Friede failing to follow the rules of the road at the time of the accident. *Id.* at 142:1-13.  There is no evidence that Friede informed anyone at Sysco he was worried about his assumed inability to complete his route on June 15, 2015, even though Friede knew any problems or issues could be brought to his supervisors. *Id.* at 144:7-145:21. There was no evidence anyone at Sysco knew Friede was uncomfortable or stressed with his assigned route on June 15, 2015, but only that someone at Sysco may have known Friede was behind on his deliveries. *Id.* at 153:10-20.  No opinion is offered that Sysco knew or should have known that Friede was incapable of safely performing and completing the route he was assigned on June 15, 2015, nor was there reason for Sysco to have had such knowledge. *Id.* at 155:15-25; 166:5-10.

Morgan's opinions were only related to what occurred on June 15, 2015.  This included Sysco's knowledge that Friede was a new, inexperienced driver; that Friede did not think he could complete the assigned route, even though Sysco did not have knowledge of this; and, according to Friede, Sysco knew he was behind but not in excess of his hours of service time. *Id.* at 167:23-169:2.  Morgan could not opine, and there is no evidence, that Sysco knew Friede was nervous about finishing his route on June 15, 2015; that Friede demonstrated any unsafe driving behavior prior to the accident; and that Sysco had knowledge before the accident that Friede would not follow his training, the rules of the road or the FMCSRs. *Id.* at 169:3-170:21.  Morgan admitted that Friede was a qualified driver under the FMCSRs and CDL standards on the date of the accident. *Id.* at 65:13-14, 66:21-24, 170:22-171:7.

Morgan did not evaluate or opine on the policies, procedures or compliance of Sysco as a whole with the FMCSRs or CDL standards and he only provided opinions about Sysco in relation to Friede and the accident on June 15, 2015.  *Id.* at 78:11-79:14, 94:24-95:7.  He did not express any opinions about Sysco's overall compliance or management.  *Id.*  Morgan did not express an opinion about Sysco's retention of Friede on June 15, 2015.  *Id.* 134:12-18.

## IV.    DISCUSSION

### A.    Punitive Damages Standard

Sysco moves the Court to issue partial summary judgment in his favor on Plaintiff's claims for punitive damages.  As a starting point, "[p]unitive damages are not a favorite of the law and are to be allowed with caution **within narrow limits**." *Weaver v. Mitchell*, 715 P.2d 1361, 1369-70 (Wyo. 1986)  (emphasis added); *see also Town of Jackson v. Shaw*, 569 P.2d 1246 (Wyo. 1977). The purpose of punitive damages is not to provide a windfall to plaintiffs and  their attorneys but is to publicly condemn some notorious action or inaction on the part  of the defendant. *Mayflower Rest. Co. v. Griego*, 741 P.2d 1106, 1115-16 (Wyo. 1987) (affirming the trial  court's rejection of punitive damages); *Town of Jackson v. Shaw*, 569 P.2d 1246 (Wyo.  1977).  The *Mayflower* court further acknowledged the "purpose" of punitive damages:

> is not to compensate a plaintiff, but to punish a defendant and deter others, [and punitive] damages are to be awarded only  for conduct involving some element of outrage, similar to that  usually found in crime.

*Mayflower Rest.*, 741 P.2d at 115-16; *see also Alexander v. Meduna*, 47 P.3d 206, 218 (Wyo. 2002).  Thus, a defendant's actions must rise to something more than mere negligence in order to justify punitive damages.

Courts have repeatedly made clear that wanton and willful misconduct "must be more  than mere mistake resulting from inexperience, excitement or confusion, and more than mere

thoughtlessness or inadventure, or simple inattention." *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo. 1979). For this reason, "[p]unitive damages are not appropriate in circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence." *Glover v. Transcor Am., Inc.*, 57 F. Supp. 2d 1240, 1250 (D. Wyo. 1999) (quoting *Danculovich*, 593 P.2d 187). Consequently, it is important to understand the distinctions between ordinary negligence, gross negligence, and willful and wanton misconduct.

Punitive damages are more frequently associated with intentional injury cases. *Union Pacific R. R. Co. v. Hause*, 1 Wyo. 27 (1871) (intentional trespass); *Cosgriff v. Miller*, 68 P. 206 (Wyo. 1902) (intentional trespass); *McIntosh v. Wales*, 134P. 274 (Wyo. 1913) (malicious prosecution); *Wilson v. Hall*, 244 P. 1002, 1004 (Wyo. 1926) (assault and battery). Here, Plaintiff has failed to allege that Defendant intentionally acted or intentionally failed to act to prevent the accident.

Willful misconduct requires conduct that is so egregious that rises above gross negligence and above "total indifference" and "utter forgetfulness of one's duty." *Weaver*, 715 P.2d at 1369-70. What distinguishes willful and wanton misconduct from gross negligence, or ordinary negligence, is the actor's state of mind:

> The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind … In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm.

*Bryant v. Hornbuckle*, 728 P.2d 1132, 1136 (Wyo. 1986); *Betterncourt v. Pride Well Service, Inc.*, 735 P.2d 722, 729 (Wyo. 1987); *Johnston v. Conoco, Inc.*, 758 P.2d 566, 568 (Wyo. 1988).

Wyoming has adopted the Restatement, Torts, § 909 when considering whether punitive damages can be awarded against an employer arising from the misconduct of the employee. *Campen v. Stone*, 635 P.2d 1121, 1125 (Wyo. 1981). Under this rule, one of the following must

be met for a plaintiff to recover punitive damages from the employer for the conduct of its employee:

> (a) the principal or a managerial agent authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> (d) the principal or a managerial agent of the principal ratified or approved the act.

*Id.*

For the purposes of this Motion, the only applicable section of Restatement, Torts, § 909 is a determination of whether Friede was unfit and Sysco was reckless in employing or retaining him.  Plaintiffs do not assert that Friede was authorized by Sysco to cause a traffic accident; that Friede was employed as a managerial agent of Sysco; or that Sysco ratified or approved of Friede causing a traffic accident.

A defendant's violation of a rule or regulation, including a Federal Motor Carrier Safety Act regulation, is not relevant to determine whether an employer was so reckless of its employment of the employee that an award of punitive damages is warranted.  *Cahalan v. May Trucking*, 2013 WL 12166343, ¶ 2 (Dist. Wyo. February 25, 2013); *citing Campen v. Stone*, 635 P.2d at 1125. There must be evidence that the employer acted with willful disregard toward a plaintiff's safety or that the regulation violation was such that the hazard created by it was enough to establish the employer's culpable negligence.  *Cahalan*, 2013 WL 12166343, ¶ 2; *citing Martin v. Alley Const.*, *Inc.*, 904 P.2d 282, 832 (Wyo. 1995).  "Culpable negligence" is more than conduct that is considered unreasonable, it requires willfulness and evidence demonstrating an extreme departure from the ordinary standard of care where the circumstances demonstrate the presence of a high degree of danger.  *Id.*

The issue thus becomes whether punitive damages are appropriate related to Plaintiffs' direct claims against Sysco, insomuch as Plaintiffs can establish that Sysco acted with "a state of mind approaching intent to do harm."  Even assuming the evidence suggests Sysco may have negligently retained, supervised and employed Friede, Plaintiffs' are required to demonstrate that Sysco acted willfully and wantonly relating to its employment of Friede; and that Sysco's conduct related to Friede's employment was an extreme departure from the ordinary standard of care that demonstrated a high likelihood of danger to Plaintiff Rodeny Miears on June 15, 2015.

**B.      The alleged punitive conduct of Sysco.**

Plaintiffs' claims for punitive damages rest with the assertion that Sysco violated its hiring "policy" when it hired Friede because he was not an experienced driver; that Sysco encouraged its driver employee Friede to act with a sense of "urgency"; and that on the date of the accident, Friede was assigned an unfamiliar route, with little instruction, and he was behind and nervous about whether he could finish the route and comply with the expectations of his employer.

**1.      The Job Description.**

Friede was hired as an inexperienced driver and trained as one within the regulatory standard. Previous, new and inexperienced drivers had been employed by Sysco.  Approval from Corporate was required for all new hires, experienced or not. This is uncontested. Notwithstanding the above, Plaintiffs maintain their argument that Sysco "deviated" or "violated" its internal policies when it hired Friede and obtained approval for his employment.

Plaintiffs continually rely upon a mistakenly identified and produced job description for experienced drivers, not inexperienced drivers.  Then they aver Bradley Frank's request for approval from Corporate to hire Friede deviated from internal policies.  However, the facts are clear – the "experienced driver description" was clearly inapplicable and every new hire required approval from

Corporate.  There was no deviation from policy, and this does not support a claim that Sysco was reckless in their employment of Friede.  Semantically, Plaintiffs are correct when they assert that Sysco deviated from the job description for experienced drivers when Friede was hired.  This is of little consequence because Friede was not hired under this job description.  Plaintiffs ignore the undisputed evidence related to Friede's hiring and that every new hire driver, regardless of experience, must be approved by Corporate before they can be hired.  Plaintiffs' assertions are even more questionable because hiring of inexperienced drivers, training them, and having them obtain CDLs is within the regulations and normal industry standard of care according to their own expert.  It is not a deviation from that standard, and not done with a high degree of likelihood of danger.  It is normal and accepted.

Even if this was a Sysco "policy" and Sysco violated it when it hired Friede, it is insufficient to support Plaintiffs' claims for punitive damages.  We know that violation of a law or a FMCSR is not relevant to determine whether an employer was so reckless in its employment of the employee that an award of punitive damages is warranted.  *Cahalan v. May Trucking*, 2013 WL 12166343, ¶ 2 (Dist. Wyo. February 25, 2013).  We also know that violation of a statute, regulation or ordinance does not automatically rise to the level of negligence per se in Wyoming.  *Frost v. Allred*, 148 P.3d 17, 19-24 (Wyo. 2006) (citations omitted).  We also know that inexperience is insufficient for an award of punitive damages.  *Danculovich*, 593 P.2d 187, 191.  Internal hiring policies obviously cannot be used to establish that a deviation that rises to the level of punitive conduct when violations of laws and rules that may be mandated for the safety of the public do not even rise to the level of negligence (or punitive conduct).  Likewise, when a person his hired in compliance with all the laws, regulations and rules, that is not evidence of punitive conduct.

There is no evidence that suggests the violation of this Sysco "policy" lead to or caused the accident.  There is no evidence that when Friede was hired in January 2015 that he was hired with the state of mind approaching intent to cause Plaintiff harm over five months later.

## 2. Experienced v. Inexperienced Driver

Plaintiffs, and Mr. Morgan, simply assume that Friede's inexperience caused the accident. Plaintiffs do not put forth any evidence that Friede's inexperience caused him to ignore the general rules of the road and the training he received from Sysco, which caused him to turn in front of an oncoming vehicle.  Friede's inexperience is not actionable unless Plaintiffs can prove he was "unfit", and Sysco was reckless in light of the same.

There is no evidence or testimony that Sysco had a reason to know that Friede created a risk to others while operating a semi-tractor trailer prior to the accident at issue based on his inexperience. Friede had undergone the "Smith Systems" training.  He had completed a twelve-week training program that Sysco provided.  There is no evidence that Friede committed any violation of the rules of the road, the FMCSRs, had any accident prior to June 15, 2015, or demonstrated any other conduct providing Sysco with notice that Friede was potentially dangerous to the motoring public.  Plaintiffs do not allege, nor is there any evidence that the Smith System and/or Sysco's twelve-week training program was insufficient within the commercial motor vehicle industry or under the FMCSRs. Instead, Plaintiffs' expert confirms the training provided to Friede was in excess of what the regulations require.  It is Plaintiffs' burden to establish a there was a deficiency in Sysco's processes.  They have failed to do so.  Plaintiffs, however, have established that Sysco did not deviate from the ordinary standard of care.

Even if there were a direct claim for punitive damages against Friede, his "inexperience, mistake, or inadvertence" is not sufficient. *Danculovich*, 593 P.2d 191.  There is no evidence, or

a claim that it was the training, direction, retention or management Friede received from Sysco caused Friede to turn in front of an oncoming vehicle.  Friede's conduct was negligent.  It was contrary to the training he received from Sysco and under the Smith's Training.  It was contrary to general personal driving experiences, and unrelated to the type of vehicle he was driving on June 15, 2015.  There is no evidence that Sysco acted recklessly when it hired Friede, or when it assigned him his route on June 15, 2015.  There is no evidence Sysco violated any rule or regulation, or the ordinary standard of care.in such a reckless manner as to warrant punishment.

3.      **Failure to complete 30-60-90-day evaluation**

Plaintiffs next allege that Sysco's failure to document that Friede was evaluated as an employee at intervals of 60 and 90 days after he was hired demonstrates willful and wanton misconduct.  Sysco acknowledges that the specific forms were not completed.  However, it is undisputed that observations of Friede's employment functions were made during his training and after he was driving on his own.  Further, completion of these forms and training are in excess of the ordinary standard of care which Plaintiffs' expert agrees.  There was no evidence that Friede demonstrated dangerous driving behavior prior to the accident.  There is no evidence that Sysco had information or evidence that should have alerted it that Friede would violate the rules of the road and turn in front of Plaintiff Rodney Miears; and/or that Sysco knew or should have known that the June 15, 2015 action would occur.  There is simply no evidence of a departure from the ordinary standard of care that warrants the imposition of punitive damages.

There is no evidence or testimony that the failure to document the 60- and 90-day evaluations caused the accident.  Plaintiffs' expert offered no opinion that the failure to complete these evaluations lead to the June 15, 2015 accident.  He did offer the opinion that Friede was a qualified driver, and that Sysco did not have any information that would lead it to believe Friede

was unsafe on the date of the accident or had previously violated laws, rules or regulations. Failure to document observations is simply insufficient to establish that Friede was unfit; or that Sysco's failure to document training that was in excess of what is mandated by the ordinary standard was reckless; or that any of this caused the accident of June 15, 2015.

### 4.    A new route with additional deliveries

Plaintiffs next contend that Sysco demonstrated willful and wanton misconduct when it assigned Friede a route that included additional and new stops that he was unfamiliar with and did not provide him with explicit instruction on where to deliver the product after he arrived at the YVI. It is undisputed that Friede had been assigned new routes with new and unfamiliar destinations prior to June 15, 2015. There is no evidence that Friede had any problem with those routes or was involved in any accident. On June 15, 2015, Sysco knew that it had a qualified driver who had previously completed a new route without incident. Assigning him new and unfamiliar deliveries was thus not willful and wanton, nor was it reckless.

Plaintiffs expert failed to cite any FMCSR that would prevent this route assignment to Friede, or that Sysco had a reason to know that Friede would get into an accident. To the extent that Mr. Morgan is qualified to offer such an opinion, he does not even cite to an industry standard or norm that prohibits drivers from being assigned new and unfamiliar deliveries. Indeed, if such a standard existed, a company like Sysco would be prevented from taking on new clients because its drivers had not delivered to them before. That is the conclusion of the claims Plaintiffs are asserting.

Then, Plaintiffs allege that Sysco demonstrated willful and wanton misconduct because it assigned Friede a delivery route that had multiple stops, and may require Friede to stay overnight in Cody, Wyoming, without notice to him. Assuming this is true, this does not establish willful

and wanton misconduct on Sysco's part.  There is no relationship between Friede possibly having to spend the night in Cody, Wyoming because he could not complete the route within his hours of service and the accident.  Under 49 C.F.R. § 395.3, a carrier is prohibited from assigning a driver a route that would cause the driver to exceed his allowable hours of service for the day.  Mr. Morgan provided no opinion that Friede's route on June 15, 2015, which was a day route from Billings, Montana to Cody, Wyoming, and back to Billings was a violation of the FMCSRs, specifically related to hours of service.  Where the Plaintiffs fail to produce evidence to support their claim, and their own expert is silent, it is obvious that there is no evidence that the time constraints of new route had anything to do with causing the accident.  There is no evidence that assigning Friede this route violated any standard or industry practice.  Sysco simply cannot have deviated from the general standard of care in such a way that warrants punishment, when there is no evidence that it even violated an industry standard on June 15, 2015.

### 5.      Sense of "urgency" for customer service

Company standards, employers expecting employees to follow those standards, and the performance of the job for which they are employed to perform are not evidence of punitive conduct.  Absent evidence that the company standards deviate from the general standard of care in such a fashion that they create the high likelihood of danger, are reckless, and are so outrageous that it rises to the level of being totally indifferent  to one's duty, expecting employees to perform the job that they are employed to perform is not punitive conduct.

Plaintiffs contend that Sysco's policy and corporate culture encouraging employees to "act with a sense of urgency" is the conduct warranting punishment.  It should first be noted that Plaintiffs have not produced any evidence that Sysco's "sense of urgency" is a violation of any standard, let alone one that creates a high likelihood of danger.  Mr. Morgan did not opine that

Sysco had a corporate culture wherein this whole "sense of urgency" rose to the level of a corporate wide level of punitive conduct.  He specifically only commented about Friede.  Without any evidence, it is paradoxical that Plaintiffs' have asserted a corporate culture of Sysco that is so outrageous, punitive damages are warranted.  Indeed, if this standard were so culpable, it should have been easy for Mr. Morgan to provide an opinion about a corporate culture with numerous examples of the over 100 employee drivers of Sysco having violated it.  Instead, Plaintiffs offer nothing.

That Friede felt rushed on June 15, 2015, and that Sysco may have known that he was behind on his deliveries, does not demonstrate willful and wanton misconduct or a deviation for the normal standard of care.  Plaintiffs' allegations are simply that Sysco should be punished because it expected is employee to do the job that he was employed to do within the timeframe allowed to perform his job.  Plaintiffs believe that Sysco should have done "something" but provide no evidence of a violation of any standard of care or duty.

Sysco's evaluation criteria of whether an employee is acting with a "sense of urgency" is customer service oriented.  It was to encourage driver efficiency which benefits the customers and Sysco.  Sysco did not advocate, instruct, demand, or otherwise take any step to imply its drivers should ignore the rules of the road, regulations, their training, or the safety of others for job efficiency, or to put "corporate profits above safety".  There is no evidence that on June 15, 2015 Sysco instructed Friede to act with abandon and create a risk to Plaintiff Rodney Miears or anyone else.  There's no evidence that Sysco encouraged Friede to act negligently.  There is no evidence that Friede ever informed Sysco that he did not believe he could finish his route on June 15, 2015; or that he requested help; or that Sysco told him to proceed, ignore his training and cause an accident.  There no evidence that Sysco deviated from any standard.

Finally, even if Sysco's culture encouraged efficient use of driver time, punitive damages may only be imposed if Plaintiffs demonstrate Friede was unfit and Sysco was reckless in its employment of him. Without facts supporting Sysco intentionally or affirmatively instructed Friede to forgo the motoring public's safety in lieu of corporate goals, this argument fails. The evidence, including Plaintiffs' expert's opinion, has already established that Friede was a qualified driver, which demonstrates that Sysco was not reckless in employing him.

## V.    CONCLUSION

Punitive damages are awarded to "publicly condemn some notorious action or inaction on part of the defendant." *Mayflower Rest. Co. v. Griego*, 741 P.2d 1106, 1115-16 (Wyo. 1987). Punitive damages may be awarded against an employer for the wrongful conduct of its employee in limited circumstances. Only upon a showing that Friede was unfit as a commercial driver and Sysco was reckless in maintaining him as an employee is it possible that Plaintiffs' claim would survive. There is no evidence of either. There are no regulations, rules, other standards, or an extreme departure from the ordinary standard of care that Sysco violated. Sysco did not condone a driver's disregard for safety in order to meet company expectations. There is simply no evidence that Sysco acted in a willful, wanton, or reckless manner as it related to Friede or the accident, or that Friede was unfit in any way to complete his job on June 15, 2015. Plaintiffs' claim for punitive damages must fail as a matter of law.

WHEREFORE, Defendant, Sysco Montana, Inc., respectfully moves the Court to grant a partial summary judgment in its favor on Plaintiffs' punitive damages claim against it.

DATED this 8th day of November 2019.

Jeff S. Meyer, WSB No. 6-4280
Schwartz, Bon, Walker & Studer, LLC
141 South Center, Suite 500
Casper WY 82601
307-235-6681 | Fax: (307) 234-5099
jmeyer@schwartzbon.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that on this 8th day of November 2019, I served a true and correct copy of the above and foregoing via CM/ECF electronic filing upon counsel properly addressed as follows:

Laurence Stinson
Scott Stinson
Stinson Law Group, PC
1421 Rumsey Ave.
Cody, WY 82414
laurence@stinsonlawyers.com

Thomas Keegan
Keegan, Krisjansons, & Miles, PC
1233 Bleinstein Ave.
Cody, WY 82414
t.keegankkmattorneys.com

*Attorneys for Plaintiff*

Jeff S. Meyer