Laurence Stinson
Scott Stinson
STINSON LAW GROUP, P.C.
1421 Rumsey Avenue
Cody, Wyoming 82414
307.587.0300
Fax: 307.527.6092
Email:  laurence@stinsonlawyers.com

Tom Keegan
KEEGAN, KRISJANSONS, & MILES, PC.
1233 Bleistein
Cody, Wyoming 82414
307.587.2385
t.keegan@kkmattorneys.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| RODNEY MIEARS and MARIAN MIEARS, husband and wife,<br><br>Plaintiff,<br><br>vs.<br><br>SYSCO MONTANA, INC.<br><br>Defendant. | Civil Action No. 18-CV-225-NDF<br><br>**PLAINTIFFS' TRAVERSE AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DOCUMENT 40.** |

COMES NOW Plaintiffs, by and through their counsel, Stinson Law Group, P.C., and Keegan, Krisjansons, & Miles, P.C., and hereby submit their Traverse and Response to *Defendant's Motion for Partial Summary Judgment on Plaintiffs' Direct Negligence Claim Against Defendant*, [Doc. 40], and supporting brief, [Doc. 41].

## I.  OVERVIEW

In its second Motion for Summary Judgment [Doc. 40] and brief [Doc. 41] (herein Second Motion), Defendant seeks dismissal of the "direct negligence claim against Defendant." [Doc 40, p. 1.] Plaintiffs are asserting a "direct claim" against Defendant for punitive damages based on its own conduct.[1]  The negligence claims asserted against Defendant are based on the negligence of Defendant's driver and imputed to Defendant by operation of Wyoming law.  Defendant has now admitted that its driver was working in the course and scope of employment and is indeed negligent.  [Doc. 41, pp 3-4.]

Thus, the Second Motion is confusing.  Plaintiff has sued Defendant for its driver's negligent conduct and Defendant admits that its driver was negligent …. but also seeks summary judgment on the negligence claim?  It appears what Defendant actually seeks is the exclusion of evidence that show foreseeability or evidence that the crash caused the injuries.  Defendant relies on its misreading of *Bogdanski v. Budzik*, supra, 408 P.3d 1156 (2018), and incorrectly claims the Wyoming Supreme Court held such facts are irrelevant once vicarious liability is admitted.  [Doc. 41, p. 4.].  Defendant's argument boldly misstates the law in Wyoming.

Plaintiffs' response is threefold.  First, Defendant ignores the fact that Plaintiffs did not plead vicarious liability but rather pled imputed liability and agency.  [Doc. 42, Amended Complaint, ¶¶8, 9, 10, 25, 27.]  In *Bogdanski*, the Wyoming Supreme Court said that, "direct negligence claims effectively impute the employee's liability for his negligent conduct to the employer, similar to vicarious liability." *Bogdanski v. Budzik*, supra, 408 P.3d 1156, ¶22 (2018).  Second, Defendant's driver Friede is the agent of Defendant and Defendant is legally responsible

---

[1] Plaintiffs incorporate their response to Defendant's Motion for Summary Judgment on Punitive Damages herein as the history and reasoning set forth therein are germane and relevant in responding to the Second Motion and Second Brief.  Plaintiffs suggest it would be helpful to the Court to read that Response first.

for his conduct, including the circumstances that led to the crash.  <u>Restatement of the Law</u>, Third, §2.04 Agency.  Third, the circumstances that caused the crash are evidence that bears on foreseeability and causation, which the Defendant has not admitted.  Tort liability requires that the harm that befell a plaintiff was foreseeable by the tortfeasor and plaintiff must show that the injuries incurred were foreseeable by the appellee.  *Lucero v. Holbrook*, 2012 WY 152, ¶ 11, 288 P.3d 1228, 1233 (Wyo. 2012).  Therefore, such evidence is relevant.  F.R.E. 401, 402.

Defendant's motion is more akin to a liminal motion seeking to preclude trial testimony or evidence of the circumstances that led to the crash (including the training of its driver, James Friede).  Plaintiffs do not agree.  Defendant's position is both factually and legally incorrect and is disputed.  Summary judgment on such evidence is inappropriate.

## II.   STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005).  An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-moving party is entitled to all reasonable inferences from the factual record, which is viewed in the light most favorable to the party opposing summary judgment.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   RELEVANT FACTS

The facts within this section are also included in Plaintiffs' Response and Traverse to Defendant's Motion for Summary Judgment on Punitive Damages.  Plaintiff relies on the

testimony of James Friede, Defendant's agent and driver; the opinions of Plaintiffs' retained expert Whitney Morgan; and the opinions of the physicians for Plaintiff Rodney Miears physicians to prove causation of injuries and foreseeability of the crash.  Plaintiffs are required to prove causation of injuries and foreseeability and Defendant has stipulated to neither.

a. <u>James Friede Says Lack of Experience, Instruction, and Supervision Caused the Crash</u>.

Defendant owns and operates a trucking delivery business in Billings, Montana, which delivers year-round throughout Montana, northern Wyoming, eastern Idaho, and the western parts of North and South Dakota.  *Ex. 1*, Frank Depo., 7:16 – 9:2; 17:20 – 18:4**.**  In 2015, and other recent years, Defendant operated approximately 100 trucks and employed approximately 120 drivers, who drove approximately 5.5 to 5.7 million miles per year.  *Ex. 1*, Frank Depo., 22:2 – 24:25.  Defendant acknowledges that its operations present a recognizable risk to the public.  *Ex. 1*, Frank Depo., 29:8-29:17.

On June 15, 2015, a Sysco Montana tractor trailer crashed into Wyoming Highway Patrol Trooper Rodney Miears.  [Doc. 42, Amended Complaint, ¶.11]  Sysco's driver and employee James Friede (Friede), unlawfully turned left in front of Rodney Miears (Miears) on Highway 14-16-20 near Cody, Wyoming (hereinafter "the Crash").  [Doc. 42, Amended Complaint, 8.]  The crash happened when Friede was making a delivery to Yellowstone Valley Inn (YVI).  [Doc. 42, Amended Complaint, ¶¶12-13].  Defendant is now admitting fault for the crash.  [Doc. 41, p. 4.]  Defendant has not admitted injury causation or that the crash was foreseeable.  Defendant admitted the crash was preventable.  *Ex. 1*, Frank Depo., 46:4-46:9.

Friede says that Defendant chose not to provide *any* instruction on where, how, or when to deliver, or which entrance or exit to use or where to leave the delivery.  *Ex. 2*, Friede Depo., 67:1–8. Friede testified that Defendant did not have a method for educating drivers as to new locations,

where the entrances and exits are located, and where the food was to be delivered. *Ex. 2*, Friede Depo., 66:15–25. As a result, at the time of the crash, Friede was by his own account a distracted driver paying attention not to the road but to where he should drive his huge truck in a new area he had not previously delivered. *Ex. 2*, Friede Depo., 66:4–10. Defendant has provided the court its *Exhibit A* in support of its Motion for Summary Judgment on Punitive Damages. [Doc. 38, 39]. *Exhibit A* is the on-board video from the truck crash. The video shows Friede urgently looking back and forth and back and forth at the parking lot into which he is trying to turn and <u>not</u> looking down the road to oncoming traffic. The video demonstrates that Friede is a distracted driver and will be helpful to a jury in determining foreseeability.

When asked if he felt his unfamiliarity with the area and lack of instruction on where to go for his deliveries on the day of the crash was a contributing factor to the Crash, Friede stated:

> I'd say, obviously, being somebody that's been in the position of being new with the commercial driver's license, I think just being new with the commercials driver's license is a big deal, and the fact that, you know, there's a lot of stuff that - - there's a lot of moving parts with the CMV that they're like not like a normal car. You know what I mean? And I think that this in itself is an issue. And then when you throw in unfamiliarity, like driving something like that in an unfamiliar area, yeah that… I guess you could chalk that up to a distraction, because it's – unless you've been driving for a long time, it's a lot harder to keep all that stuff straight and be able to navigate. You know what I mean?...

*Ex. 2,* Friede Depo., 34:1 – 35:9. Friede testified that if he had had more experience with a CMV the accident probably could have been avoided. *Ex. 2*, Friede Depo., 44:9 – 20.

Friede testified that on the day of the crash, he was concerned about the increased number of stops on his route and that he was behind schedule. *Ex. 2*, Friede Depo., 105:6–107:14. His frustrations began that morning when he arrived at Defendant's facility to find that additional stops, at locations to which he had never been, had been added to the Cody, Wyoming, route he had previously driven. *Ex. 2*, Friede Depo., 105:12–15. These extra stops would prevent him from being able to complete his route and make it back to Billings on the same day, given the mandatory

maximum daily hours allowed by the Department of Transportation. As a result, Friede was distressed that Defendant failed to warn him that this particular route likely required that he be away overnight, he did not have an over-night bag, and was not prepared to stay over-night. *Ex. 2*, Friede Depo., 107:1–14. Then on one of his first stops[2], the stack of his truck (which he called the CMV for commercial motor vehicle) became stuck inside the parking awning near a BBQ delivery stop. *Ex 2*, Friede Depo., 105:22–106:6. This caused Friede delay in continuing his route. *Ex. 2*, Friede Depo., 106: 6-15. To make matters worse, when Friede made his delivery stop at Dairy Queen that morning, two pallets of product fell over, requiring Mr. Friede to spend additional time picking up and restacking the product, causing Mr. Friede to fall further behind on his deliveries. *Ex. 2,* Friede Depo., 105:6–11.

Friede stated that Defendant always stressed to never get behind on the timing of deliveries and to maintain that standard. *Id*. Friede noted that meeting that standard was harder on some routes than on others. *Ex 2.*, Friede Depo., 60:7–14. As to the day of the crash, Mr. Friede said "I had to have a sense of urgency for sure, yeah." *Ex. 2,* Friede Depo., 60:19–61:1. Friede explained that he was not encouraged to break the law, but there was definitely a sense of urgency pressed upon the drivers to get the deliveries made on time, he explained: …"there was a sense of urgency to get the job done. The sense of urgency would be their standard. They wanted you to maintain their standard…" *Ex. 2*, Friede Depo., 102:20–104:17.

The bottom line is that Friede felt the continued pressure of urgency to get his route done, to get it done on time, and as a result of the problems he had experienced earlier in the day, to hustle faster to finish his route. *Ex. 2*, Friede Depo., 108:13–21.

---

[2] Friede's was unsure whether he stopped at the BBQ restaurant or Dairy Queen first on the day of the Crash. However, since both stops occurred before the Crash, the order of the stops is immaterial as the getting the stack stuck on the truck occurred prior to the crash with Plaintiff Rodney Miears.

b. <u>Whitney Morgan</u>.

Whitney Morgan is a retained expert for the Plaintiffs and a specialist in commercial motor vehicle compliance, enforcement and safety of operations. *Ex. 3*, Morgan Depo., 1:11-14. His report concluded that "Clearly Mr. Friede had issues at previous stops on the date of the accident and Sysco was putting profits over safety by hiring and utilizing an entry-level driver." *Ex. 3*, Morgan Depo., 150:15 – 20. During his deposition, Mr. Morgan explained the basis for his opinion as follows:

> The main thing that impacts the ultimate conclusion is the fact that Mr. Friede was an entry-level driver and he had a new route and he had more stops than he had previously had.
>
> And also, they didn't follow through with the two-year 100,000-mile policy, Company policy and procedure or the 30-, 60-, and 90-day driver's evaluation. They only did the 30-day evaluation, so they weren't properly monitoring him. And then they gave him more than he felt like he could handle on the date of the accident. And according to Mr. Friede himself, that's the reason for his level of distraction at the time along with the fact that he had had a couple of issues arising during the day with his deliveries.

*Ex. 3*, Morgan Depo., 127:11 – 25; 150:17 – 153:9.

With regards to the botched training evaluations, Morgan stated that these evaluations are not Federal Motor Carrier Act standards but are part of Defendant's self-identified training policies and procedures for safety and were not followed. *Ex. 3*, Morgan Depo., 135:5 – 17. Morgan further explained that based on his forty plus years of experience, "the reason for doing the training and the evaluations is to determine whether or not the driver has demonstrated that he's capable of safely operating the vehicle." *Ex. 3*, Morgan Depo., 136:14 – 18.

c. <u>Defendant Contests Injury Causation and Foreseeability</u>.

While Defendant is admitting Friede was its agent and was negligent, Defendant is not admitting that Plaintiff Rodney Miears was injured in the crash. Defendant did not admit injury causation or foreseeability in any of its filings. In its answer to amended complaint, Defendant

affirmatively asserts as a defense that Plaintiff was not injured by it and that the fault of other actors is required under W.S. §1-1-109, which is Wyoming's comparative fault statute. Defendant's expert designation specifically disputes that the injuries of Plaintiff Rodney Miears were caused, in total or part, by the crash. [Doc 37, Defendant Expert Designation.]

## IV.   LEGAL ANALYSIS

Plaintiffs' allegations are based on black letter law and follow the relevant holdings of the Wyoming Supreme Court and the Federal Rules of Evidence.

a. <u>Defendant is the Principal and is Responsible for its Agent James Friede.</u>

In their Amended Complaint, Plaintiffs allege that:

8.   James Friede was the driver of the tractor-trailer at the time of the crash and is the employee and agent of Defendant Sysco, who is the principal.

9.   The conduct and/or liability of driver Friede is imputed to Defendant Sysco.

10.   Defendant Sysco, through its agent Friede, failed to follow the safe operation and driving rules and was negligent.

[Doc. 42, Amended Complaint, ¶¶ 8-10.]  For the purposes of Defendant's Second Motion, these facts are accepted as true.

Defendant is the principal and Friede its agent.  Defendant has admitted this fact.  An employer is subject to liability for torts committed by employees while acting within the scope of their employment.  This is basic Wyoming law and is §2.04 of the <u>Restatement of the Law</u>, Third, Agency.  This black letter law is confirmed in the *Bogdanski* decision, supra.  In *Bogdanski*, the Wyoming Supreme Court said that, "direct negligence claims effectively impute the employee's liability for his negligent conduct to the employer, similar to vicarious liability." *Bogdanski*, supra, at ¶22.  In other words, the negligence of Friede is the negligence of Defendant and Friede's

conduct is imputed to Defendant and it is liable for *all of the conduct* that led to the crash.  In its motion, Defendant appears to recognize that it is liable for its agent, but clearly misapprehends the nature of imputed liability claims and the holding of *Bogdanski*.

   b. <u>Defendant's Reliance on *Bogdanski* is Misplaced</u>.

Defendant relies on *Bogdanski* for the proposition that the conduct of an employer is irrelevant when vicarious liability is admitted.  This is not the holding in *Bogdanski*.  The Court in *Bogdanski* was primarily concerned about a double recovery in cases where the driver <u>and</u> the employer were named for the same conduct. *Bogdanski v. Budzik*, 2018 WY 7, ¶ 2, 408 P.3d 1156, 1157, ¶22 (Wyo. 2018)(emphasis added).  Bogdanski sued his co-employee, Budzik, and the motor carrier, FedEx Ground, for the same acts. *Id*. at ¶20.  The Wyoming Supreme Court answered this narrow question: Can Bogdanski maintain a direct negligence claim **in addition** to a vicarious liability claim when FedEx has stipulated that it will be vicariously liable for Budzik's negligence, if any?  *Bogdanski v. Budzik*, 2018 WY 7, ¶ 2, 408 P.3d 1156, 1157 (Wyo. 2018)(emphasis added).  The answer is no.

The court ruled that when the driver and the motor carrier are named there cannot be a second recovery against the motor carrier for the same conduct.  The court was not saying that evidence of negligence, causation, and foreseeability was irrelevant when a motor carrier admitted vicarious liability.  The Court in Bogdanski expressly set forth its concern that a double recovery should not occur, while confirming that evidence of negligent hiring or supervision is allowable but that it be "tethered" to the negligent acts of an employee.

> An employer's negligent act in hiring, supervision and retention, or entrustment is not a wholly independent cause of the plaintiff's injuries, **unconnected** to the employee's negligence. A plaintiff has no cause of action against the employer for negligent hiring, for example, **unless and until the employee's own negligence causes an accident**.

> Stated differently, both vicarious liability and direct negligence claims are **tethered** to the employee's tortious acts. "Derivative or dependent liability means that one element of imposing liability on the employer is a finding of some level of culpability by the employee in causing injury to a third party." *McHaffie,* 891 S.W.2d at 825. As one court explained:
>
>> Under either theory, the liability of the principal is dependent on the negligence of the agent. If it is not disputed that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable. Once the principal has admitted its liability under a respondeat superior theory ... the cause of action for negligent entrustment is duplicative and unnecessary. To allow both causes of action to stand would allow a jury to assess or apportion a principal's liability twice.

*Bogdanski*, 408 P.3d 1156, 1163, ¶22. (Emphasis added.)

Plaintiffs' case and allegations fit firmly within the framework of *Bogdanski*. First, Plaintiffs sued Defendant for the imputed negligence of its agent and employee truck driver. A time-honored approach recently re-affirmed in *Bogdanski*. Second, the employee and agent is negligent and Defendant has admitted it. Third, Plaintiffs "tether" the Defendant's conduct to the negligence of the employee as *Bogdanski* requires. Fourth, Plaintiffs have named only the motor carrier, Sysco, and have not named both the driver and Defendant so there is no chance of a double recovery that bothered the Court in *Bogdanski*. Bottom line, the approach Plaintiffs are taking in their case is the exact approach blessed by the Wyoming Supreme Court in *Bogdanski*. Defendant's argument is at odds with the plain language and the express holding of *Bogdanski*. Defendant is illogically and improperly arguing that once vicarious liability is admitted the facts of the crash do not come in. Defendant's is incorrect.

      c.     <u>Foreseeability and Causation Remain a Jury Question.</u>

The information that Defendant seeks to preclude is relevant, admissible, and should go to the jury. The Wyoming Supreme Court has squarely addressed this issue which, like agency, is black letter law:  Tort liability, however, requires that the harm that befell a plaintiff was foreseeable by the tortfeasor. *Lucero v. Holbrook*, 2012 WY 152, ¶ 11, 288 P.3d 1228, 1233 (Wyo.

2012).  In the case at hand, for instance, the appellants must show that the injuries they incurred were foreseeable by the appellee.  *Id*.  Foreseeability addresses whether the harm incurred was a natural consequence of the alleged tortfeasor's actions.  The closeness of the connection between the injury and the conduct is related to causation and contemplates whether any intervening conduct contributed to the harm.  *Id*. at 1234, ¶ 13.  In order for proximate cause to exist, "the accident or injury must be the natural and probable consequence of the act of negligence." *Foote v. Simek*, 2006 WY 96, ¶ 22, 139 P.3d 455, 463 (Wyo.2006).

> Plaintiffs allege that:
>
> As a result of the accident, Plaintiff was physically injured including, but not limited to, injuries to his back and spine, specifically at T7 and T8, which cause debilitating pain.  Following the accident, Plaintiff Rodney Miears experienced pain of such severity he was unable to remain seated without intense aggravation of the pain.  His pain continues today.  For example, Plaintiff Rodney Miears cannot engage in the normal activities of life, such as standing, sitting, picking up a child, or routine household activities without pain, discomfort, and frustration.  These injuries have left Plaintiff Rodney Miears feeling isolated.

And,

> As a result of the accident, Plaintiff Rodney Miears suffered, and continues to suffer, permanent loss of enjoyment of life, emotional distress and pain.

[Doc. 42, Amended Complaint, ¶¶ 21-22.].  Defendant denied that it caused the injuries in  ¶ 21, but admitted Plaintiff Rodney Miears was injured.  Defendant denied ¶22.  [Doc. 24, Answer, ¶14].

Because Defendant contests that Plaintiff Rodney Miears was disabled and injured as a result of the crash, Plaintiff is required to prove foreseeability and causation.  Defendant did not admit injury causation or foreseeability in any of its filings.  In its answer to amended complaint, Defendant affirmatively asserts as a defense that Plaintiff was not injured by it and that the fault of other actors is required under W.S. §1-1-109, which is Wyoming's comparative fault statute.

Defendant's expert designation specifically disputes that the injuries of Plaintiff Rodney Miears were caused, in total or part, by the crash. [Doc 37, Defendant Expert Designation.]. Plaintiffs intend to meet their burden to prove foreseeability and legal causation of injuries by introducing evidence as to why and how of the crash occurred. Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401. What caused the crash, whether it was foreseeable, and whether Defendant caused the injuries is all entirely relevant under the Federal Rules of Evidence. Relevant evidence is admissible evidence. Fed. R. Evid. 402.

## V.   CONCLUSION

Defendant has taken an untenable and unexplainable position in its Second Motion and in its Answer to the Amended Complaint. Defendant has admitted that driver Friede was its agent and was negligent and Defendant clearly is aware of the *Bogdanski* decision. Nevertheless, Defendant moves for summary judgment on the "direct negligence" claim. Defendant takes the illogical position that the conduct which caused the crash is not admissible or relevant and relies on *Bogdanski*, which very obviously reaches an opposite conclusion when such conduct is related to an employee's negligence as it is here. Defendant further takes the position, albeit somewhat impliedly, that its self-generated admission of vicarious liability – an allegation that Plaintiff never made – nullifies the normal rules of relevancy. For the many reasons identified herein, Plaintiffs respectfully submits that there are genuine and material disputes of fact and law and that this is not an issue the court can resolve by summary judgment and Defendant's Motion should be denied.

**DATED** this 3rd day of December 2019.

          **Stinson Law Group, P.C.**

By: */s/ Laurence W. Stinson*
**Laurence W. Stinson**
1421 Rumsey Avenue
Cody, Wyoming 82414
307.587.0300
Fax:  307.527.6092
Attorney for Plaintiffs